UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x

B.W. o/b/o K.S., a minor,                    **ANSWER**
T.S. o/b/o J.W., a minor,

                                             09 Civ. 6686 (HBP)

                                    Plaintiffs,

                    -against-

NEW YORK CITY DEPARTMENT OF EDUCATION,

                                    Defendant.

-------------------------------------------------------------------- x

        Defendant New York City Department of Education, by its attorney, Michael A.
Cardozo, Corporation Counsel of the City of New York, for its Answer to the Amended
Complaint ("Complaint"), respectfully alleges as follows:

        1.  Denies the allegations set forth in paragraph "1" of the Complaint, except
admits that Plaintiffs purport to proceed as set forth therein.

        2.  Denies the allegations set forth in paragraph "2" of the Complaint, except
admits that Plaintiffs purport to proceed as set forth therein.

        3.  Denies the allegations set forth in paragraph "3" of the Complaint, except
admits that Plaintiffs purport to set forth a basis for jurisdiction therein.

        4.  Denies the allegations set forth in paragraph "4" of the Complaint, except
admits that Plaintiffs purport to set forth a basis for venue therein.

        5. Denies the allegations set forth in paragraph "5" of the Complaint,
affirmatively states that Defendant is a local educational agency as defined by the Individuals
with Disabilities Education Act ("IDEA"), and respectfully refers the Court to Article 52-A of
the N.Y. Educ. Law regarding the powers and duties of the DOE for a complete and accurate

statement of its contents, and to Article 89 of the New York State Education Law for a complete and accurate statement of its contents.

6.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "6" of the Complaint, except admits that Plaintiffs are the parents or legal guardians of the identified minor students and admits that the minor students were students with disabilities at all relevant times herein.

7.  Denies the allegations set forth in paragraph "7" of the Complaint, and respectfully refers the Court to the provisions of the IDEIA for a complete and accurate statement of their contents.

8.  Denies the allegations set forth in paragraph "8" of the Complaint, and respectfully refers the Court to the statutory authority cited therein for a complete and accurate statement of its contents.

9.  Admits the allegations set forth in paragraph "9" of the Complaint.

10.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "10" of the Complaint.

11.  Denies the allegations set forth in paragraph "11" of the Complaint, and respectfully refers the Court to the Impartial Hearing Officer's decision for Case No. 104295, annexed as Ex. A, for a summary of the relief sought at that hearing.

12.  Denies the allegations set forth in paragraph "12" of the Complaint, and respectfully refers the Court to the Impartial Hearing Officer's decision for Case No. 104295 for a complete and accurate statement of its contents.

13.    Denies the allegations set forth in paragraph "13" of the Complaint, and respectfully refers the Court to the Impartial Hearing Officer's decision for Case No. 105046, annexed as Ex. B, for a summary of the relief sought at that hearing.

14.    Denies the allegations set forth in paragraph "14" of the Complaint, and respectfully refers the Court to the Impartial Hearing Officer's decision for Case No. 105046 for a complete and accurate statement of its contents.

15.    Denies the allegations set forth in paragraph "15" of the Complaint, and respectfully refers the Court to the annexed Impartial Hearing Officer's decisions for a complete and accurate statement of their contents.

16.    Denies the allegations set forth in paragraph "16" of the Complaint, except admits that PFCR submitted requests for attorney's fees following each impartial hearing.

17.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "17" of the Complaint.

18.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "18" of the Complaint.

19.    Denies the allegations set forth in paragraph "19" of the Complaint.

20.    Denies the allegations set forth in paragraph "20" of the Complaint.

21.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "21" of the Complaint, and respectfully refers the Court to 20 U.S.C. § 1415(i)(3)(C) for a complete and accurate statement of its contents.

22.    Denies the allegations set forth in paragraph "22" of the Complaint, except admits that Plaintiff purports to proceed as set forth therein.

23.    Denies the allegations set forth in paragraph "23" of the Complaint.

24.    Denies the allegations set forth in paragraph "24" of the Complaint.

With respect to the prayer for relief, including subparagraphs 1 through 3 inclusive, Defendant denies the allegations set forth therein, except admits that Plaintiff purports to seek the relief sought therein.

### AS AND FOR A FIRST AFFIRMATIVE DEFENSE:

25.    The Amended Complaint fails to state a claim upon which relief can be granted.

### AS AND FOR A SECOND AFFIRMATIVE DEFENSE

26.    Plaintiffs' claims should be dismissed for lack of standing.

### AS AND FOR A THIRD AFFIRMATIVE DEFENSE:

27.    Defendant has not violated any rights, privileges, or immunities under the Constitution or laws of the United States or the State of New York, or of any political subdivision thereof.

### AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

28.    Plaintiffs have failed to provide documentation and information sufficient to support an award of reasonable attorney's fees because, _inter alia_, Plaintiffs did not substantially prevail at all relevant impartial hearings.

**WHEREFORE,** Defendant requests judgment dismissing the Amended Complaint and denying all relief requested therein, together with such other and further relief as the Court deems just and proper.

Dated:      New York, New York
            October 7, 2009

           MICHAEL A. CARDOZO
           Corporation Counsel of the
            City of New York
           Attorney for Defendant
           100 Church Street, Room 2-165
           New York, New York 10007
           (212) 788-8316
           arosinus@law.nyc.gov

           By:           s/
                DAVID A. ROSINUS, JR. (DR 6431)
                Assistant Corporation Counsel

TO:     By ECF
        Michael D. Hampden (MH 2359)
        Partnership for Children's Rights
        Attorney for Plaintiffs
        271 Madison Avenue, 17th Floor
        New York, NY 10016
        (212) 683-7999 ext. 226
        Fax: (212) 683-5544
        mhampden@pfcr.org

# EXHIBIT A

# FINDINGS OF FACT AND DECISION

| | |
|---|---|
| Case Number: | 104295 |
| Student's Name: | Kai Simpkins |
| Date of Birth: | October 26, 1998 |
| District: | 3 |
| Hearing Requested By: | Parent/Guardian |
| Date of Hearing: | April 27, 2006<br>May 24, 2006<br>June 9, 2006<br>June 13, 2006<br>June 19, 2006 |
| Hearing Officer: | Theresa R. Joyner, Esq. |

Hearing Officer's Findings of Fact and Decision                                   1

Case No.  104295

NAMES AND TITLES OF PERSONS WHO APPEARED APRIL 27, 2006

| | | |
|---|---|---|
| Marilyn Mazur | Attorney | Parent |
| Beverly Wilburn | Grandmother | |
| Solange Captan | Attorney | Department of Education |

NAMES AND TITLES OF PERSONS WHO APPEARED MAY 24, 2006

| | | |
|---|---|---|
| Marilyn Mazur | Attorney | Parent |
| Whitney Wilburn | Mother | |
| Beverly Wilburn | Grandmother | |
| Pam Miller | Assistant Director, Gaynor School | Parent |
| Solange Captan | Attorney | Department of Education |

NAMES AND TITLES OF PERSONS WHO APPEARED JUNE 9, 2006

| | | |
|---|---|---|
| Marilyn Mazur | Attorney | Parent |
| Tyler Smith | Education Specialist for City Council Member | Parent |
| Beverly Wilburn | Grandmother | |
| Eldina Ceho | Teacher | Parent |
| Solange Captan | Attorney | Department of Education |
| Mariam Quarashi | Attorney | Department of Education |
| Barbara La Rocca | Chairperson Designee, School Psychologist, CSE District 3 | Department of Education |

NAMES AND TITLES OF PERSONS WHO APPEARED JUNE 13, 2006

| | | |
|---|---|---|
| Marilyn Mazur | Attorney | Parent |
| Beverly Wilburn | Grandmother | |
| Solange Captan | Attorney | Department of Education |
| James Lark (Via Telephone) | Social Worker | Department of Education |
| Hyacinth Brea (Via Telephone) | Guidance Counselor | Department of Education |
| Marjorie Ayee (Via Telephone) | SETSS Provider, PS 166 | Department of Education |

Hearing Officer's Findings of Fact and Decision                                    2

Case No.  104295
_____


NAMES AND TITLES OF PERSONS WHO APPEARED JUNE 19, 2006

| Marilyn Mazur | Attorney | Parent |
| Beverly Wilburn | Grandmother | |
| Solange Captan | Attorney | Department of Education |
| Suzanne Felini | Teacher, SETSS | Department of Education |
| Mildred Sessoms | Teacher | Department of Education |

Case No.  104295

_____

This matter came fore me on April 27, 2006, May 24, 2006, June 9, 13, 2006 and concluded on June 19, 2006.  The hearings were held pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §1415(f)(1).  The hearing was convened at the request of the grandmother, which was received on March 17, 2006.  The compliance date was extended to July 31, 2006 to accommodate each additional day of hearing and post hearing submissions.

## BACKGROUND

The student is a 7 year old female, who is in the second grade at a public school. An initial Individualized Education Program (IEP) was prepared on December 19, 2005. The Committee on Special Education (CSE) classified the student as learning disabled. The CSE recommended a general education program with Special Education Teacher Support Services (SETSS).  The student was to be pulled out of class, 5 periods per week and taught in a group not to exceed eight students.

The grandmother's counselor contends that the Department of Education (DOE) violated the Child Find provisions of IDEA by not referring the child for evaluation until October 2005, when she was already in the 2nd grade.  They are seeking an order compelling the Department of Education to fund tuition prospectively at a non-approved private school for the 2006-2007 school year.

## THE GRANDMOTHER'S CASE

The grandmother's case was presented by Marilyn C. Mazur, Esq. and in the testimonies of the grandmother; Pam Miller, Assistant Director of Education; the mother; Ms. Ceho, 1st grade teacher; Mr. Smith, Education Specialist for City Council Member Gail A. Brewer as well as in documentary evidence.

The grandmother testified that she has had custody of the child since she was two and a half months old.  She noted that there is a family history of attention deficit disorder (ADD), both she and her daughter have ADD.  The grandmother stated she became aware that her granddaughter had ADD when the child was in preschool.  She took the child to Columbia Presbyterian where she underwent a battery of tests.  Shortly thereafter her granddaughter became part of a preschool attention deficit hyperactivity disorder (ADHD) treatment and follow up studies at the New York State Psychiatric Institute.  The

Case No.  104295

child has been part of these studies since March 2002 and every year each of the child's teachers have participated by filling out questionnaire forms. (Exh. I; Tr. at 105-107)

The grandmother stated she had sought to have the student evaluated for special education services since preschool.  She was told by someone at the school that a packet would be mailed to her advising her of the evaluation process, she never received it. Also, she never received the follow-up letter dated July 9, 2002 regarding the packet and the July 19, 2002 letter advising that the referral for evaluation would be withdrawn. (Exhs.11, 12; Tr. at 110-111)

The child has struggled academically since kindergarten with staying focused, completing assignments and has not performed on the same level as her peers.  The grandmother spoke to Ms. Ceho, the child's first grade teacher, regarding the difficulties the student was having with her schoolwork. She informed the teacher that her granddaughter had ADHD and personally gave the teacher the questionnaire for the ADHD study. (Tr. at 113, 115)  The grandmother spoke to Ms. Ceho's supervisor, school guidance counselor and other school officials in an effort to obtain help for her granddaughter.  She also sought help from her local councilwoman's office.  Pursuant to her efforts, the child was provided at-risk SETSS services for approximately a month in May 2005. (Tr. at 183)  The grandmother requested that the child be evaluated and in December 2005, the CSE convened an initial IEP meeting.

Pam Miller, the Assistant Director of the private school, testified that she has a Bachelor of Science in special education, a Masters in science, postgraduate credits at Columbia University in testing and evaluation along with thirty five years teaching experience.  She described the student population of 122 in the school of at least average intelligence, with varying types of learning disabilities and/or attention deficit issues.  The class-size consists of eight to nine students in a class with two teachers.  The school has a sequenced program and reading, math, social studies, writing, art and music for the younger children.  It provides a comprehensive remedial program, each class of 8-9 students, is further broken down to smaller groups with four to five students.  If the student is still struggling, language therapy and individual pull out sessions are available.

Case No.  104295

The work is sequenced and children are moved step by step to a point where they master the previous work prior to moving on to the next assignment. (Tr. at 202, 203, 205)

Ms. Miller opined that children who have attention problems need a small class setting.  She stated that she evaluated the student for an hour and a half and found that the student had attention problems compounded by difficulties with auditory dissemination, language issues and listening comprehension.  She cited an example of border choice discrimination, such as when she was talking about violins to the child and the child thought she was talking about violence.  Ms. Miller stated this indicated the inability of the child to pick up the subtlety of sound and to apply it so that the language makes sense. This problem spills over into writing, causing the child to misspell words, and affects her listening comprehension.  She noted the student's sentences were poorly constructed.  An example of that was demonstrated when the child was describing someone playing an instrument, she said "they make beautiful music."  The child could count from one to ten, but could not add and subtract from one to ten without using her fingers. (Tr. at 208-210) She had trouble sequencing the days of the week.  She opined the child may be on grade level, but "the understanding that supercedes that is not there." (Tr. at 216)  The child needs a lot of remediation, small class setting, material presented slowly and repeated which her school would provide. (Tr. at 210-211)

The mother testified that she is very involved in her child's education and that her daughter has been struggling academically at her present school for the past three years despite her numerous efforts to obtain an appropriate educational program for her daughter.  She was told by the 1st grade teacher that the child is missing a lot of her lessons because she is not focusing, causing her to fall behind the other students.  The teacher referred her to a reading buddy program that met once a week, since the child's reading skills were deficit.  The child participated in that program.

In the beginning of 2005, the teacher requested assistance from the Pupil Personnel Committee (PPC) indicating the child has "a very difficult time concentrating"… (Exh. 19)  The PPC recommended at risk SETSS in March 2005; the mother contacted Ms. Brea, the guidance counselor, several times to ascertain when the at-risk services would begin.  Ms. Brea told her, after several conversations, that all

Hearing Officer's Findings of Fact and Decision                                              6

Case No.  104295

children who have assessments are picked up for SETSS.  Subsequently, the mother gave the counselor an evaluation from Columbia University, dated March 21, 2005.  The evaluation showed that the student was diagnosed as having ADHD. (Exh. L)   The mother stated after leaving numerous unanswered messages for the counselor, she went to the principal's office and then was directed to speak to the assistant principal.   The assistant principal indicated he was not aware of the situation and would follow up. Several days later the student was picked up by Ms. Felini, the SETSS teacher. The SETSS services were to be provided for eight weeks through the end of the school year, five times a week. (Tr. at 256-258)  However, the services were provided sporadically and after four weeks, the services stopped without any notification to the mother or teacher. (Tr. at 275)

The mother opined that the child needs to be in a school that understands how to teach a student with ADHD.  She stated her daughter is very unhappy in her present school, she cries a lot and says she does not want to go to school. The daughter says "she does not understand what's going on and that teachers don't teach right." (Tr. at 266)  In an effort to get help for her daughter, she has spoken several times to the school psychologist, to no avail.  The mother stated that pursuant to a teacher's recommendation, she enrolled the child into the Hunter Program.  However, it was ineffective since it did not cover school work. (Tr. at 282-283)

The mother testified that she has on a consistent basis sought to get additional help for her daughter and has communicated her concerns to teachers, the counselor and other school staff members.  Even after, the December evaluation, the mother stated she sought push-in services, small class setting, 12:1 and or extra SETSS. (Tr. at 292, 299)

Mr. Tyler, an educational specialist for a City Council Member, testified that he received several calls from the grandmother, commencing in December 2005.  He stated the calls concerned obtaining academic help for the child, the IEP and later concern about the child being held back in the second grade.  He contacted the principal and others regarding obtaining additional SETSS hours.  The principal advised him that in order to obtain additional SETSS, the IEP would have to be amended. (Tr. at 397, 401)  On cross examination, Mr. Smith recalled that the first conversation with the grandmother was

Hearing Officer's Findings of Fact and Decision                                    7

Case No.  104295
_____

about transferring the child to another school.  He acknowledged that he was not aware of any services that the child received at school except for the five hour pull-out SETSS. (Tr. at 408, 412)

Ms. Ceho, the 1st grade teacher, testified that she had taken one course in special education during her undergraduate years. (Tr. at 340)  She admitted that her knowledge of IDEA was limited and that she knew it had something to do with classification. (Tr. at 344)  She acknowledged that the grandmother told her the student had ADHD. (Tr. at 348)  The teacher observed that the student was very distracted in class, had difficulty concentrating and she often had to focus the student.  The student was a poor reader; she referred her to a tutoring program, BJ Reads, which provided one-on-one instructions. The program met twice a week, for about 45 minutes.  Also, the teacher would work with the child individually when students had to work on independent tasks. (Tr. at 352, 353) She opined that the child's reading skills were further aggravated by her weak phonic skills. (Tr. at 354)

The teacher recalls discussions with the mother concerning the child's poor academic performance.  The teacher referred the student's case to the PPC in March 2005; the PPC recommended at-risk services. (Tr. at 360)

**THE DEPARTMENT OF EDUCATION'S CASE**

The DOE's case was presented by Solange Captain, Esq. and in the testimonies of Edina Ceho, teacher; Barbara La Rocca, school psychologist; James Lark, school social worker; Hyacinth Brea, guidance counselor; Marjory Ayee, SETSS provider; Suzanne Felini, SETSS provider; Mildred Sessoms, teacher as well as in documentary evidence.

Ms. Ceho testified that within the first month of teaching the child, she recognized the student was having difficulty with focusing and concentrating in class.  She described the different methods she employed to address these issues.  She worked with the student on a one-to-one basis, focusing on reading, writing, phonics and math.  In January 2005, she formed a small reading group with the child in the class which continued for three months.  In addition, she enrolled the student in the BJ Read group and subsequently referred the matter to the PPC where at-risk services were recommended and provided for

a brief period. (Tr. at 442-444)  Despite all these efforts, the child continued to struggle academically. (Tr. at 442-443)

The teacher opined that the student had the ability, the potential and the intelligence to perform but was thwarted by her distractibility level. (Tr. at 451)  Ms. Ceho stated that she conferred with her colleagues on several occasions regarding how best to address the child's needs. (Tr. at 465)

The results of a comprehensive evaluation done on November 30, 2005, were reviewed by Ms. La Rocca, school psychologist.  Ms. La Rocca testified that the student scored in the average range, both on the verbal score and on the performance scale on the WISC-III test of cognition.  She also scored in the average range on the full scale. (Exh. 6)  On the Woodcock Reading Mastery test the student's academic skills were found to be below average range and her ability to apply those skills were found to be in the average range. (Tr. at 487)  The psychologist noted the student gets along with staff and her peers. The only area that needed to be addressed was her low reading score. (Tr. at 514)

She opined that the student was appropriately placed.  The psychologist noted that because of the student's high cognitive functioning, that it would not be appropriate to place her in a full-time special education class with children of lower cognitive functioning abilities. (Tr. at 496)  When queried about testing for auditory processing, she stated that it had not been done and that she was not required to do so. (Tr. at 545)

James Lark, the school social worker, testified that he initially met the student and her family in February 2006.  The mother had expressed to him that she believed her daughter would benefit from counseling.  He had one session with the child and concluded that the child could benefit from group counseling as a means to help her with social interaction with her peers. (Tr. at 559-560)  He conducted a social history in October 2005 with the mother.  He was never informed that the student had been evaluated and diagnosed with ADHD when he was conducting the social history. Subsequently, he learned that the child's teacher and guidance counselor were both aware of the diagnosis. (Tr. at 570)  He recalled after the IEP had been implemented that the mother expressed concern that her daughter was not progressing academically and requested additional SETSS hours. (Tr. at 584-585)

Ms. Brea, the school guidance counselor, testified the child was initially referred to her in the Spring 2004 by her kindergarten teacher.  The counselor met with the child's mother and recommended some summer intervention programs that were available as well as programs available during the school year.  The mother enrolled the child into two of the programs. (Tr. at 611-612)  The following year at the end of the 1st grade the mother approached her regarding programs for academic intervention.  The counselor gave information regarding appropriate programs. (Tr. at 623)

In March 2005, the PCC recommendation at-risk services; the guidance counselor is a member of the PPC.  The counselor admitted she had concerns since Spring 2005 that the child may have a disability, however, she did not refer the child for a special education evaluation. (Tr. at 650)  Some time in March 2006, she began providing counseling services to the student once a week, thirty minute sessions in a group up to three children. (Tr. at 627)

Ms. Ayee, the student's SETSS provider, testified that she began providing at-risk SETSS services for the student in September 2005.  The services were provided every week, approximately 3-5 times a week, forty-five minute sessions in a group of four.  At that time the focus was on strengthening her phonetic skills, word recognition and comprehension skills. (Tr. at 677, 678-680)  In February 2006, she began providing SETSS services pursuant to the student's IEP, which mandated a specific program based on the results of evaluations done.  The program recommended was the Wilson Reading Program.  She described the Wilson Reading Program, it focuses on decoding and encoding which is reading and spelling.  The program has a systematic content which is broken into different blocks sequentially and requires frequent repetition of the acquired skills until the student gains mastery of that specific skill.  The IEP mandates that SETSS be provided five days a week, in forty-five minute sessions in a group not to exceed five students.  Services were provided on a pull-out basis. (Tr. at 678-680)  The student fully participates in all the sequential steps of the Wilson Program.  She is mastering the skills and takes pride in her accomplishments. (Tr. 683-684)

The teacher discussed the student's goals as written on the IEP and stated that the goals are based on the Wilson Program and that the program can last up to three years.

Case No. 104295

(Tr. at 696-697) She noted that mandated services require that three progress reports be done for the year and that at-risk services do not require written reports. (Tr. at 706) She described the progress report marking system. Each goal is chartered and measured. Status of progress towards the goal is noted and if the goal is not met, a reason is provided. (Ex. 20) This chart of progress is incorporated into the IEP. (Tr. at 709-710) Ms. Ayee opined that the student is in the appropriate academic program as specified on her IEP (Tr. at 714) and that the student will need SETSS services for several years. (Tr. at 727)

Ms. Felini, testified that she provided at-risk SETSS services to the student in the first grade, from early May 2005 to June 13, 2005. The services were provided three times a week, forty-five minute sessions in a group of five. (Tr. at 745) She did not recall what progress, if any, the student made. Progress reports are not mandated for at-risk services (Tr. at 751)

Ms. Sessoms, the student's 2nd grade teacher, stated there are 21 students in her class. At the beginning of the school year, she recalled the student cried a lot when work was given to her to be completed, fidgeted a lot and was often easily distracted. Also, the student had difficulty recalling, retaining information. The teacher attempted to remedy some of these problems by refocusing the student, repeating a lot of the concepts being taught and providing small group instructions. (Tr. at 765-766) One-to-one instructions were provided four days a week, in ten minute sessions. (Tr. at 802)

In October 2005, she assessed the student's reading skills and found her reading skills to be on a kindergarten level. The next assessment done in December indicated the student's reading skills improved to a level approaching a 1st grade reader. The June assessment indicated the student had progressed to a 1st grade reading level. (Tr. at 773-774)

On cross examination, the teacher acknowledged the student was below grade level in reading, writing and spelling. When queried about the ECLAS-2 assessment, the teacher admitted that the level 5 reading score was inaccurate and it should have been marked as level 4. (Tr. at 817)

Hearing Officer's Findings of Fact and Decision                                      11

Case No.  104295
_____

Furthermore, the teacher acknowledged that the student's reading skills were very poor in October 2005 and that the student needed a lot of help.  In February 2006, the teacher testified that she sent a promotion in doubt letter to the family.  The teacher stated she had reservations regarding the student's promotion until early June 2006.  She weighed all that transpired during the school year.  The student's progress was steady, both academically and socially.  The student was receiving SETSS and was developing confidence to the extent she was beginning to work independently.  Based on the above, Ms. Sessoms testified that in the beginning of June she decided to promote the student. (Tr. at 832-824, 829-830)

I have reviewed all the testimonial and documentary evidence in the record.  The parent alleges that the DOE denied the student a "free appropriate public education" (FAPE) as mandated under IDEA, 20 U.S.C. §§ 1400(c,) 1412(1)(1994) and seeks prospective tuition payment under Connors v. Mills, 34 F. Supp. 2d 794 (N.D.N.Y. 1998 ("Connors").  The parent argues that the DOE violated the Child Find provisions of the IDEA.

The evidence shows that the child has struggled academically since kindergarten, each teacher recognized that the student needed some academic intervention.  At the end of the student's kindergarten year, the kindergarten teacher referred the student's mother to Ms. Brea, the school's guidance counselor, for assistance in obtaining supplemental academic help for her daughter. (Tr. at 611 and 637) At which time, the guidance counselor referred the parent to several summer programs and after school programs, some of which were not free.  The parents availed themselves of some of the programs through the summer and 1st grade.  However, the Hunter program proved to be ineffective and others failed to address the student's needs.

Both the 1st grade and 2nd grade teachers testified that they were aware early in the school year that the child was very distracted in class, had difficulty concentrating and constantly needed to be refocused. (Tr. at 352 and 766)  The teachers employed numerous academic interventions.

It is clear from the record that both the 1st and 2nd grade teachers were aware that the child had been diagnosed with ADHD.  Both had filled out questionnaires for an

Case No.  104295

ADHD study that the child was participating in.  Also, they had been informed of the attention deficit hyperactivity disorder diagnosis by either the mother or grandmother. Despite, the multiple warnings that the child may have a disability that was impeding her ability to learn and fulfill her academic potential the child was not referred for a special education evaluation until the grandmother specifically requested it in September 2005. (Tr. at 119)

The CSE convened in December 2005; it recommended SETSS, 5 x a week in a small group on a pull-out basis.  The services commenced in January 2006.  Despite the IEP mandated services and the at-risk services provided previously the child continues to struggle and has been in jeopardy of failing in both the 1st and 2nd grade.  The 2nd grade teacher was not able to decide that the student should be promoted until the end of the school year, some time in June.  The student is at least one grade behind in reading and writing.   The mother and grandmother have consistently informed the teachers, counselors, SETSS providers and principal that the student does not understand what is going on in the classroom and suffers low self-esteem because of her academic problems.

It is undisputed that the student's 1st grade teacher was told that the child had ADHD and that the teacher filled out the questionnaire early in the 2004-2005 school year.  Also, the evidence shows that other school staff members were aware of the ADHD diagnosis but failed to refer the child for a special education evaluation.  A school district has an obligation to provide a FAPE to students who have met the criteria for identification as students with disabilities under the IDEA and Article 89 of the New York State Education Law.  Moreover, IDEA places an affirmative duty on state and local educational agencies to identify, locate and evaluate all children with disabilities residing in the state.  (20 U.S.C. §1412 [a][3]; 34 C.F.R. §300.125[a][1][i]).  In this instance, based upon the facts presented, it is clear the child should have been referred to the CSE by the fall of 2004, when the student was in the first grade.  Also, it is abundantly clear that even after the evaluation the student was not appropriately placed.  I find that the DOE violated the Child Find provisions of the IDEA and that it has not provided the student a "FAPE" as mandated by IDEA.  The parent's request for prospective tuition

Hearing Officer's Findings of Fact and Decision                                      13

Case No.  104295

payment is premature since the CSE has not provided a final recommendation for the upcoming 2006-2007 school year and there is time for the DOE to remedy the situation.

## ORDER

It is Ordered that within fifteen days after the date of this decision, the CSE shall reconvene and recommend an appropriate placement for this student with consideration given to the private evaluations presented at the hearings.

Dated:  July 31, 2006

THERESA R. JOYNER, ESQ.
Impartial Hearing Officer

TRJ:ds

## PLEASE TAKE NOTICE

**Within 35 days of the date of this decision, the parent and/or the New York City Department of Education has a right to appeal the decision to the State Review Officer of the New York State Education Department under Section 4404 of the Education Law and the Individuals with Disabilities Education Act.**

**"The notice of intention to seek review shall be served upon the school district not less than 10 days before service of a copy of the petition for review upon such school district, and within 25 days from the date of the decision sought to be reviewed.  The petition for review shall be served upon the school district within 35 days from the date of the decision sought to be reviewed.  If the decision has been served by mail upon petitioner, the date of mailing and the four days subsequent thereto shall be excluded in computing the 25- or 35-day period."  (8NYCRR279.2[b])  Failure to file the notice of intention to seek review is a waiver of the right to appeal this decision.**

**Directions and sample forms for filing an appeal are included with this decision.  Directions and forms can also be found in the Office of State Review website: www.sro.nysed.gov/appeals.htm.**

Hearing Officer's Findings of Fact and Decision 14

Case No.  104295

## DOCUMENTATION ENTERED INTO RECORD APRIL 27, 2006

| | | |
|---|---|---|
| A. | Hearing Request, 3/16/06, 2 pp. | Parent |
| B. | Evidence Disclosure, 4/20/06, 1 p. | Parent |
| C. | Subpoena Duces Tecum to Marilyn Sprecher, 4/18/06, 1 p. | Parent |
| D. | Subpoena to Ms. Ayee, 4/18/06, 1 p. | Parent |
| E. | 2005-06 Report Card and Parent Letter, 2/1/06, 2 pp. | Parent |
| F. | Stephen Gaynor School Enrollment Contract, 4/18/06, 2 pp. | Parent |
| G. | Stephen Gaynor Information 3/16/06, 5 pp. | Parent |
| H. | Beverly Wilburn SSI Information, 1/05, 2 pp. | Parent |
| I. | Letter from Dr. Laurence Greenhill, 4/18/06, 1 p. | Parent |
| J. | Letter from Dr. Erika Rosner, 4/19/06, 1 p. | Parent |
| 1. | Impartial Hearing Request, 3/16/06, 2 pp. | Department of Education |
| 2. | Referral Letter from Parent, 9/22/05, 1 p. | Department of Education |
| 3. | Initial Referral to the CSE, 10/28/05, 3 pp. | Department of Education |
| 4. | Consent for Initial Evaluation, 10/27/05, 1 p. | Department of Education |
| 5. | Social History Report, 10/27/05, 4 pp. | Department of Education |
| 6. | Comprehensive Evaluation, 11/30/05, 8 pp. | Department of Education |
| 7. | Specific Learning Disability Justification Form, 1 p. | Department of Education |
| 8. | IEP, 12/19/05, 9 pp. | Department of Education |
| 9. | C-6 Final Notice of Recommendation-Initial, 12/19/05, 1 p. | Department of Education |

Hearing Officer's Findings of Fact and Decision                                    15

Case No.  104295

| | | |
|---|---|---|
| 10. | A-1 Authorization to Attend Special Education program, 1/6/06, 1 p. | Department of Education |
| 11. | Letter to parent from Committee on Preschool Special Education, 7/9/02, 1 p. | Department of Education |
| 12. | Letter to Parent from CSE on Preschool Special Education, 7/19/02, 1 p. | Department of Education |
| 13. | Letter to Parent from School Psychologist, 4/4/06, 1 p. | Department of Education |
| 14. | DOE Motion to Dismiss, 4/4/06, 4 pp. | Department of Education |
| 15. | Subpoena to Stephen Gaynor, 4/11/06, 2 pp. | Department of Education |
| 16. | Stephen Gaynor Application for Admission, 1/14/06, 4 pp. | Department of Education |
| 17. | Letter to Parent from Stephen Gaynor, 3/9/06, 1 p. | Department of Education |
| 18. | Enrollment Contract, 4/18/06, 2 pp. | Department of Education |
| 19. | Request for Assistance from the Pupil Personnel Committee, 3/28/05, 1 p. | Department of Education |
| 20. | IEP Annual Goals & Short Term Objectives, 1 p. | Department of Education |
| 21. | E-Mail Correspondence, 4/06, 6 pp. | Department of Education |

## DOCUMENTATION ENTERED INTO RECORD MAY 24, 2006

| | | |
|---|---|---|
| L. | Columbia Evaluation, 1/22/05, 2 pp. | Parent |
| H3. | Beverly Wilburn's SSI Information Added to H, 11/27/05, 1 p. | Parent |
| 22. | Columbia University Evaluation, 10/13/05, 2 pp. | Department of Education |
| 23. | Letter to Columbia University, 5/2/06, 1 p. | Department of Education |
| 24. | Cornell Psychologist Evaluation, 12/12/05, 8 pp. | Department of Education |

Hearing Officer's Findings of Fact and Decision                                    16

Case No.  104295
_____

## DOCUMENTATION ENTERED INTO RECORD JUNE 9, 2006

K.     Letter from Dr. Sandi Clemente, 4/24/06, 1 p.          Parent

25.    Getting Started, 10/17/06, 23 pp.                      Department of Education


## DOCUMENTATION ENTERED INTO RECORD JUNE 15, 2006

M.     ICLASS Test II, 23 pp.                                 Parent

# EXHIBIT B

# FINDINGS OF FACT AND DECISION

Case Number:          105046

Student's Name:       Justin Williams

Date of Birth:         May 7, 1996

District:              5

Hearing Requested By:   Parent

Date of Hearing:      July 14, 2006

Hearing Officer:      Susan C. Lushing, Esq.

Hearing Officer's Findings of Fact and Decision                                          1

Case No.    105046

NAMES AND TITLES OF PERSONS WHO APPEARED

| | | |
|---|---|---|
| Marilyn Mazer | Attorney, Legal Services for Children | Parent |
| Tonya Sellers | Mother | |
| Billy English | Director of Admissions, Cook Center for Learning and Development | Parent |
| Kimberly Filoia | Chairperson Designee, School Psychologist, CSE, District 5 | Department of Education |

Hearing Officer's Findings of Fact and Decision                                          2

Case No.   105046
_____

I was appointed as the Impartial Hearing Officer in this matter on June 16, 2006 after a request for an impartial hearing was received by the Department of Education (DOE) from the attorney representing the parent.  An impartial hearing was held on July 14, 2006. The parent was represented by Marilyn Mazur Esq. of Legal Services for Children and Kimberly Filoia, psychologist, appeared for Committee on Special Education (CSE) District 5. Upon request of the parties, the compliance date was extended to August 14, 2006.

Parent's Position:

The parent called two witnesses and introduced six documents in evidence as Exhibits A-F. At a previous impartial hearing, there was an order that the DOE refer the student to Central Based Support Team (CBST) for a nonpublic school placement at an approved school or otherwise arrange for a non-approved school. (Exhibit D)   After referral to and no acceptance by 12 approved schools, the parent is now seeking to enroll the student in the Cooke Center at DOE expense pursuant to School Committee of the Town of Burlington v Department of Education, Massachusetts, 471 U.S. 359 (1985) and Florence County School District v Carter by Carter, 510 U.S. 7 (1993).  In addition she is seeking prospective funding under Connors v Mills, 34 F.Supp.2d 795 (N.D.N.Y. 1998).

**The mother** testified that after the impartial hearing in April 2006, her son was transferred from general education into a 12:1 class and began receiving outside tutoring services for 10 hours per week. On June 12, 2006 she and her son visited the Cooke Center at Blessed Sacrament School and met with Mr. English. She has always cooperated with the DOE, kept in touch with Julie Cohen at CBST as the referrals were sent out to the approval nonpublic schools and was willing to visit any school that indicated an interest in her son. She has five children and cannot afford to advance the tuition for Cooke Center subject to later reimbursement. She participated in the Individualized Education Program (IEP) meeting of May 11, 2006 by telephone and was told that a physical exam was a necessary component of the package sent to nonpublic schools.  She hoped to get a new exam but had no health insurance.  Then she learned that a previous exam from February 2006 on file at his current school could be used (Exhibit 6) and on May 21, 2006 she faxed it to the CSE. (Tr. 12-32).

Case No.   105046

**Billy English** is the director of admissions for the Cooke Center School, a special education school located inside a general education school. The special education students generally receive their academic subjects in small classes of 12 students, 2 teachers and 1 paraprofessional, using multi-sensory methodologies and programs like Orton-Gillingham for reading and Saxon for math.  The school has four classes and this student would be on level three containing 9 and 10 year olds.   They all have communication issues although the classifications include learning disabled, speech impaired, mild mental retardation and higher functioning Pervasive Developmental Disorder (PDD).  The school provides related services, such as speech, counseling, OT and PT, as mandated on the IEP. Although it is housed in a parochial school, these students receive no religious education but can be integrated with the general education students for music, art, gym. The admission process involves submission of documents - the IEP and evaluations - which were received on March 18, 2006, and then an interview with the parent and student. This student sat in on a class and did well, keeping up with the work and getting along with his peers. The therapists noted delays in expressive and receptive language but felt they could work with him. Generally it takes three weeks after the visit but it took longer for this student as he was initially put on a waiting list. Tuition is $35,500.  (Tr. 33-53).

DOE Position:

The DOE called presented six documents in evidence as Exhibits 1–6.  While it conceded prong 1 in that there was no placement offered within the time allowed, it argued that the Cooke Center is not an appropriate placement and that the parent's lack of cooperation contributed to delays in CBST obtaining a placement.

FF and D

A Board of Education may be required to reimburse parents for their costs if the services offered by the Board are inappropriate, the services selected by the parents are appropriate and equitable considerations support the parents claim. School Committee of Burlington v Department of Education of Massachusetts, 471 U.S. 359 (1985), Florence County School District Four v Carter by Carter, 510 U.S. 7 (1993).  The burden of proof now rests on the parent as to the recommendation being challenged as well as to prongs

Hearing Officer's Findings of Fact and Decision                                    4

Case No.   105046

two and three. In addition, funding can be provided prospectively for parents who are financial unable to pay under <u>Connors v Mills</u>, 34 F.Supp.2d 795 (N.D.N.Y. 1998).

The parent is not challenging the classification of speech impaired in the most recent IEP of May 11, 2006 and pursuant to the order of an impartial hearing officer, the CSE recommended referral to CBST for placement in a nonpublic school (Exhibit C). The DOE concedes it has offered no nonpublic school placement within the time allowed and thus has no placement to uphold under prong 1.

Turning now to the parent's choice, from the testimony of Mr. English and the literature provided by the school (Exhibit E), I find the parent has proved that the Cooke Center School will be able to meet the student's needs in a 12:1:1:1 class of students of similar age and functional levels. Despite their varying classifications the students share communication deficits and the school uses specialized teaching methodologies, provides all mandated related services and offers opportunities for integration with age-appropriate general education students for nonacademic subjects.  Thus I find the parent has proved her choice is likely to provide educational benefit for this student and is therefore appropriate under prong 2.

Finally I find that the parent has been cooperative with the CSE and CBST. If there was a delay in supplying a physical exam, it was not done willfully or deliberately and amounted to a short 10-day period.  Nor does the fact that the parent applied to the Cooke program in March indicate bad faith. Given the shortage of seats in nonpublic schools, such early contact is prudent and allows the parent to explore multiple options. Therefore I find there to be no equitable impediment to prevent reimbursement or in this case, prospective funding of the Cooke Center School.  As the parent is not in a financial position to pay the reasonable tuition of $35,500 and then seek reimbursement, I find that she is entitled to prospective funding under <u>Connors.</u>

Case No.   105046
_____

THEREFORE IT IS ORDERED that the DOE pay for this student to attend the
Cooke Center School for the 2006-2007 school year at a cost of $35,500.

Dated:  August 1, 2006


_____
SUSAN C. LUSHING, ESQ.
Impartial Hearing Officer


SCL:nn


**PLEASE TAKE NOTICE**

        **Within 35 days of the date of this decision, the parent and/or the New York
City Department of Education has a right to appeal the decision to the State Review
Officer of the New York State Education Department under Section 4404 of the
Education Law and the Individuals with Disabilities Education Act.**

        **"The notice of intention to seek review shall be served upon the school
district not less than 10 days before service of a copy of the petition for review upon
such school district, and within 25 days from the date of the decision sought to be
reviewed.  The petition for review shall be served upon the school district within 35
days from the date of the decision sought to be reviewed.  If the decision has been
served by mail upon petitioner, the date of mailing and the four days subsequent
thereto shall be excluded in computing the 25- or 35-day period."
(8NYCRR279.2[b])  Failure to file the notice of intention to seek review is a waiver
of the right to appeal this decision.**

        **Directions and sample forms for filing an appeal are included with this
decision.  Directions and forms can also be found in the Office of State Review
website: www.sro.nysed.gov/appeals.htm.**

Hearing Officer's Findings of Fact and Decision                                    6

Case No.   105046

## DOCUMENTATION ENTERED INTO RECORD

| | | |
|---|---|---|
| A. | Impartial Hearing Request, 6/15/06, 1 pp. | Parent |
| B. | Evidence Disclosure, 6/29/06, 1 p. | Parent |
| C. | IEP, 5/11/06, 15 pp. | Parent |
| D. | Findings of Fact and Decision, 5/5/06, 14 pp. | Parent |
| E. | Information from the Cook Center School, 6 pp. | Parent |
| F. | Enrollment Contract for Cook Center School, 3 pp. | Parent |
| 1. | CBST Student Case Profile, 7/11/06, 3 pp. | Department of Education |
| 2. | Social History Update, 1/26/06, 4 pp. | Department of Education |
| 3. | Psychoeducational Assessment, 1/23/06, 6 pp. | Department of Education |
| 4. | Speech and Language Evaluation, 2/9/06, 10 pp. | Department of Education |
| 5. | Classroom Observation, 2/17/06, 3 pp. | Department of Education |
| 6. | Physical Exam, 2/8/06, 3 pp. | Department of Education |

Index No.  09 Civ. 6686 (HBP)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

B.W. o/b/o K.S., a minor,
T.S. o/b/o J.W., a minor,

Plaintiffs,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION,

Defendant.

# ANSWER

### MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
Attorney for Defendant
100 Church Street
New York, N.Y.  10007

*Of Counsel:  David A. Rosinus, Jr.*
*Tel:  (212) 788-8316*
*Matter #. 2009-028912*

*Due and timely service is hereby admitted.*

*New York, N.Y.* ............................................................ *, 20......*

............................................................................................. *, Esq.*

*Attorney for* ................................................................................