UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
B.W. o/b/o K.S., a minor, and
T.S. o/b/o J.W., a minor,

               Plaintiffs,

      -against-

NEW YORK CITY DEPARTMENT
OF EDUCATION,

             Defendant.
------------------------------------------------------------x

Civil Action No.
09 Civ. 6686 (RMB) (HBP)


# MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
## AWARDING ATTORNEY'S FEES AND COSTS


MICHAEL D. HAMPDEN (MH 2359)
PARTNERSHIP FOR CHILDREN'S RIGHTS
Attorney for Plaintiffs
271 Madison Avenue, 17th Floor
New York, NY 10016
(212) 683-7999 ext. 226
Fax (212) 683-5544
mhampden@pfcr.org

## TABLE OF CONTENTS

PRELIMINARY STATEMENT     1

STATEMENT OF FACTS     1

    A.   Facts Common to Both Plaintiffs.     1

    B.   Facts Specific to Plaintiff B.W.     3

    C.   Facts Specific to Plaintiff T.S.     6

    D.   Marilyn C. Mazur's Qualifications, Experience, and Hourly Rate.     8

STATUTORY AND REGULATORY FRAMEWORK     9

ARGUMENT

    PLAINTIFFS ARE PREVAILING PARTIES AND ARE ENTITLED TO AN AWARD OF REASONABLE ATTORNEY'S FEES PURSUANT TO THE IDEA.     12

    A.   Plaintiffs Were Prevailing Parties In Their Impartial Hearings Under the IDEA.     12

      1.   Plaintiff B.W. Is a Prevailing Party.     13

        a. B.W.'s Administrative Proceedings.     13

        b. B.W. Prevailed in the Hearing Before IHO Joyner.     15

        c. B.W. Subsequently Achieved Additional IHO-Ordered Relief That Was Inextricably Linked to the Hearing Before IHO Joyner.     17

      2. Plaintiff T.S. Is a Prevailing Party.     19

    B. The Hours Expended Were Reasonable.     20

C. Ms. Mazur's Hourly Rate Was Consistent With Rates Prevailing
in the Community and Was Appropriate Under the IDEA.                22

D. Costs and Fees Incurred in Maintaining This Action.                23

CONCLUSION                                                           24


ADDENDUM
Attorney's Fees Provision of the IDEA, 20 U.S.C. § 1415(i)(3)        A-1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
B.W. o/b/o K.S., a minor, and
T.S. o/b/o J.W., a minor,

                    Plaintiffs,

      -against-

NEW YORK CITY DEPARTMENT
OF EDUCATION,

              Defendant.
-----------------------------------------------------------x

Civil Action No.
09 Civ. 6686 (RMB) (HBP)

MEMORANDUM OF LAW
IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT
AWARDING ATTORNEY'S
FEES AND COSTS

## PRELIMINARY STATEMENT

      This Memorandum of Law is submitted in support of plaintiffs' motion for reasonable attorney's fees and costs under the Individuals with Disabilities Education Improvement Act of 2004 (IDEA or the Act), 20 U.S.C. § 1400 *et seq.*

## STATEMENT OF FACTS

**A.**   <u>**Facts Common to Both Plaintiffs.**</u>

      Marilyn C. Mazur, Esq., as a volunteer attorney for Partnership for Children's Rights (PFCR), represented plaintiffs B.W. and T.S., on behalf of K.S. and J.W., respectively, students with disabilities, in their Impartial Hearings held in accordance with the IDEA. Amended Complaint (Am. Compl.) ¶ 9; Affidavit of Michael D. Hampden (Hampden Aff.) ¶ 2; Affidavit of Marilyn C. Mazur (Mazur Aff.) ¶¶ 3, 10, 32.

      Subsequent to each Impartial Hearing decision PFCR requested the defendant New York City Department of Education (DOE) in writing to pay attorney's fees authorized by the IDEA in

connection with each hearing.  Am. Compl. ¶ 16; Hampden Aff. ¶ 9; Mazur Aff. ¶¶ 19, 38; Exhs. J, S.

Both requests for attorney's fees included the following attachments: (1) a chronological timesheet, computed to one-tenth of an hour for each task performed, (2) an affidavit by Ms. Mazur attesting to the provision of the services identified in the request, (3) a copy of the PFCR retainer agreement with the parent, (4) PFCR's hourly rates in accordance with its attorney's fees policy, based on an attorney's years of legal practice, (5) a written authorization by each plaintiff for PFCR to demand and receive attorney's fees and costs, and (6) a general release of the DOE signed on behalf of PFCR.  Am. Compl. ¶ 17; Hampden Aff. ¶ 11; Mazur Aff. ¶¶ 20, 39; Exhs. J, S.  Ms. Mazur's resume was on file with the DOE at the time of her request for attorney's fees in plaintiffs' cases.  Am. Compl. ¶ 9; Hampden Aff. ¶ 12; Mazur Aff. ¶ 5; Exh. A.

Plaintiffs' retainer agreements with PFCR provided that no fees will be charged to plaintiffs for legal services rendered.  Am. Compl. ¶ 18; Hampden Aff. ¶ 13; Mazur Aff. ¶¶ 23, 41.  Plaintiffs signed authorizations to PFCR to institute claims on their behalf to secure an award of attorney's fees and costs for services provided in connection with their Impartial Hearings, and to receive such fees on their behalf.  Am. Compl. ¶ 17; Hampden Aff. ¶ 14; Mazur Aff. ¶¶ 24, 42; Exhs. L, U.

The hourly rate charged by Ms. Mazur was specified in PFCR's written attorney's fees policy, which is based on each attorney's years of legal practice.  Am. Compl. ¶ 21; Hampden Aff. ¶ 17; Mazur Aff. ¶ 9; Exh. B.   At the time the legal services were provided to plaintiffs B.W. and T.S., Ms. Mazur was an attorney with more than 15 years in the practice of law, and as such was at "senior partner" level under the PFCR fee policy, specifying $375.00 per hour. Hampden Aff. ¶ 17; Mazur Aff. ¶ 9; Exh. A.

2

No costs were billed for either of the plaintiffs' administrative hearings. Hampden Aff. ¶ 27; Exhs. K, T.   Attorney travel time was billed at $187.50, one-half Ms. Mazur's hourly rate. Hampden Aff. ¶ 27; Exhs. K, T.   No bonus or multiplier was used in calculating the fees requested; no fees were requested in relation to any Individualized Education Program (IEP) meeting or mediation; and no fees were requested for any time subsequent to any written offer of settlement to the parent.  Hampden Aff. ¶ 28.  In accordance with the Act, no fees are requested for time spent in development of the student's IEP, Committee on Special Education (CSE) meetings, or resolution sessions held as part of the Impartial Hearing process. § 1414(i)(3)(D)(ii)–(iii).

**B.     Facts Specific to Plaintiff B.W.**

Plaintiff B.W. is the grandmother and legal guardian of K.S., a learning-disabled second-grader attending public school at the time the Impartial Hearing in issue was requested.  Mazur Aff. ¶ 10.

On March 16, 2006, Ms. Mazur filed a written Impartial Hearing request on behalf of B.W., challenging the validity and appropriateness of K.S.'s then-current IEP dated December 19, 2005, which recommended a general education class with five periods per week of Special Education Teacher Support Services (SETSS) in a group of eight students.  Mazur Aff. ¶¶ 11, 12; Exh. C.

B.W.'s hearing request sought an order of the Impartial Hearing Officer (IHO) declaring: (1) the DOE violated the "child find" provision of the IDEA; (2) finding that the DOE failed to provide K.S. with a free appropriate public education (FAPE) as required by the IDEA; and (3) ordering the DOE to pay for K.S.'s tuition to the Stephen Gaynor School, a private special education school, for the 2006–2007 school year.  Mazur Aff. ¶ 13; Exh. C.

3

B.W.'s Impartial Hearing, Case No. 104295, was assigned to IHO Theresa R. Joyner, Esq. Mazur Aff. ¶¶ 10, 14; Exh. I.

On April 18, May 25, and June 9, 2006, Ms. Mazur served subpoenas for the production of documents by the DOE in connection with the Impartial Hearing. Mazur Aff. ¶¶ 14; Exh. E. On April 20, 2006, Ms. Mazur served on the DOE copies of documentary evidence she intended to introduce into evidence in the hearing. Mazur Aff. ¶ 15; Exh. F.

Five days of hearings were held, on April 27, May 24, June 9, June 13, and June 19, 2006, consuming 958 pages of hearing transcript. Mazur Aff. ¶ 16; Exh. G. Ms. Mazur submitted a post-hearing memorandum of law addressing two of the legal issues raised in the hearing: "child find" under the IDEA, and the availability of direct tuition payment by the DOE to the private school as a permissible remedy under the IDEA. Mazur Aff. ¶ 17; Exh. H.

On July 31, 2006, IHO Joyner issued her decision, finding that the DOE violated the child find requirement of the IDEA, determining that the DOE failed to provide a FAPE to K.S., and ordering the CSE to reconvene and offer an appropriate program for K.S. Am. Compl. ¶ 22; Hampden Aff. ¶ 24; Mazur Aff. ¶¶ 18; Exh. I. Because the IHO found that the DOE had time prior to the school year to remedy the deficient IEP, she declined to order the DOE to pay the private school tuition. Exh. I at 13–14.

On January 2, 2007, Ms. Mazur sent a written request to the DOE for payment of attorney's fees in the amount of $18,642.50, for 58.9 hours of legal work. Mazur Aff. ¶¶ 19; Exh. J. Ms. Mazur's timesheet stated that in the course of her representation she performed the following tasks: fact-gathering for the hearing (1.4 hours, February 16–March 9, 2006); preparation of a written hearing request (.8 hours, March 16, 2006); waiver of formal resolution session and telephone contact with the DOE, the client and the private school (.7 hours, March

4

18–28, 2006); subpoena preparation, review and response to the DOE's motion to dismiss (2.0 hours, April 11, 2006); review and response to the DOE's objections to the parent's subpoenas (.8 hours, April 18, 2006); written evidence disclosure to the DOE (1.1 hours, April 25, 2006); preparation of hearing testimony and opening and closing statements (3.0 hours, April 26, 2006); attendance on first day of Impartial Hearing, including attorney travel time (4.0 hours, April 27, 2006); review of new DOE exhibits, evidence disclosure to DOE and subpoena preparation (1.0 hours, May 17, 2006); legal research on the child find and least restrictive environment provisions of the IDEA (2.0 hours, May 18, 2006); attendance on second day of Impartial Hearing, including attorney travel time (7.5 hours, May 24, 2006); witness hearing preparation (2.0 hours, June 7, 2006); attendance on third day of Impartial Hearing, including attorney travel time (7.5 hours, June 9, 2006); parent and grandmother witness preparation (2.0 hours, June 12, 2006); attendance on fourth day of Impartial Hearing, including attorney travel time (6.0 hours, June 13, 2006); preparation for the fifth day of hearing, including cross-examination of witnesses (.6 hours, June 16, 2006); attendance on fifth day of Impartial Hearing, including attorney travel time (8.5 hours, June 19, 2006); review and correction of hearing transcripts (3.0 hours, June 20, 2006); preparation of post-hearing memorandum of law (4.2 hours, June 21–27, 2006); and preparation of attorney's fees claim (.6 hours, December 7, 2006).  Mazur Aff. ¶ 21; Exh. K.

The January 2, 2007 timesheet indicated that Ms. Mazur did not charge for three hours spent reviewing and correcting hearing transcripts on June 20, 2006, or for the one hour spent preparing a preliminary draft of her post-hearing memorandum of law on June 22, 2006.  Mazur Aff. ¶ 22; Exh. K.

In accordance with the IHO's July 31, 2006 order, the CSE reconvened on August 11, 2006 and issued a new IEP for K.S., recommending the same program as it had in the December

19, 2005 IEP that was found to be inappropriate by IHO Joyner—a general education class with five periods per week of SETSS in a group of eight students. Mazur Aff. ¶ 26; Exh. M.   The IEP, under the heading "Conference Result," indicated "No Change." Mazur Aff. ¶ 26; Exh. M.

On August 16, 2006, Ms. Mazur filed a second Impartial Hearing request on B.W.'s behalf, requesting an order that the DOE pay for K.S.'s tuition for enrollment in the Stephen Gaynor School for the 2006–2007 school year. Mazur Aff. ¶ 27; Exh. N.   This second hearing, Case No. 105928, was assigned to IHO Maria L. Marchiano, Esq.   Four days of hearings were held, on September 25, October 16, October 17, and October 20, 2006. Mazur Aff. ¶ 28; Exh. O at 1.

During the hearing, the parties reached a settlement pursuant to which the DOE consented to pay the full tuition of $37,900.00 to the Stephen Gaynor School for the 2006–2007 school year.   Exh. O at 3.   On October 25, 2006, IHO Marchiano issued a Statement of Agreement and Order. Mazur Aff. ¶ 28; Exh. O.   Following IHO Marchiano's so-ordered settlement, the DOE paid the full tuition to the Stephen Gaynor School as ordered, and paid attorney's fees to PFCR for the second Impartial Hearing. Mazur Aff. ¶ 31.

**C.   Facts Specific to Plaintiff T.S.**

Ms. Mazur represented plaintiff T.S., on behalf of her son J.W., in Impartial Hearing Office Case No. 105046. Am. Compl. ¶ 22; Hampden Aff. ¶ 24; Mazur Aff. ¶ 32.

In June 2006, at the time the hearing was requested, J.W. was a speech-impaired student attending public school and repeating the third grade. Mazur Aff. ¶ 33; Exh. P.

In a previous Impartial Hearing the DOE had been ordered to place J.W. in a state-approved non-public special education school, but did not do so. Mazur Aff. ¶ 34; Exh. P. Through the parent's independent efforts, J.W. was accepted for the 2006–2007 school year at

the Cooke Center for Learning and Development (Cooke Center), a private special education school not on the state-approved list used by the DOE.  Mazur Aff. ¶ 34; Exh. P.

In this second Impartial Hearing, Case No. 105046, T.S. sought an order declaring that the DOE failed to provide J.W. with a FAPE, and directing the DOE to pay J.W.'s tuition at the Cooke Center for the 2006–2007 school year.  Mazur Aff. ¶ 35; Exh. P.

On June 29, 2006, Ms. Mazur served on the DOE copies of the documentary evidence she intended to introduce into evidence at the hearing.  Mazur Aff. ¶ 36; Exh. Q.

After an evidentiary hearing held on July 14, 2006, IHO Susan C. Lushing, Esq. ruled favorably on the parent's requests and ordered the DOE to pay the Cooke Center tuition in the amount of $35,500.00 for the 2006–2007 school year.  Mazur Aff. ¶ 37; Exh. R.

On January 9, 2007, Ms. Mazur sent a written request to the DOE for payment of attorney's fees in the amount of $2,512.50, for 7.7 hours of legal work performed.  Mazur Aff. ¶ 38; Exh. S.   The request was accompanied by a timesheet of tasks billed, a copy of the decision of the IHO, T.S.'s retainer agreement, an authorization signed by T.S. permitting PFCR to seek and accept statutory attorney's fees from the DOE, and a general release of the DOE signed on behalf of PFCR.  Am. Compl. ¶ 17; Hampden Aff. ¶ 11; Mazur Aff. ¶ 39; Exh. S.

Ms. Mazur's timesheet in the T.S. case stated that she performed the following tasks: preparation of a written hearing request (.8 hours, June 15, 2006); hearing preparation, including evidence disclosure (3.0 hours, July 12, 2006); attendance at Impartial Hearing, including attorney travel time (3.5 hours, July 14, 2006); and preparation of the attorney's fees claim (.4 hours, November 1, 2006).  Mazur Aff. ¶ 40; Exh. T.

7

**D.**   **Marilyn C. Mazur's Qualifications, Experience, and Hourly Rate.**

Marilyn C. Mazur, Esq., the PFCR volunteer attorney who handled plaintiffs' Impartial Hearings, received her J.D. degree *cum laude* from New York University School of Law in 1972, and her B.A. degree from Barnard College in 1964.  She was admitted to practice in the courts of the State of New York in 1973.   Mazur Aff. ¶ 5; Exh. A.  After joining PFCR as a volunteer attorney in 2000, she specialized in the practice of education law, handling numerous Impartial Hearings under the IDEA.   Mazur Aff. ¶ 6.

Prior to her volunteer work with PFCR, Ms. Mazur served as Senior Counsel, HarperCollins Publishers, Inc. (1993–96); as Pro Bono Cooperating Attorney, American Civil Liberties Union, Children's Rights Project, and New York Civil Liberties Union (1990–91); as Assistant, then Associate Counsel, Time Incorporated, Magazine Law Department (1982–85); as Staff Attorney, New York State Moreland Act Commission (1975); and as Litigation Associate, Wachtell, Lipton, Rosen & Katz (1972–75, 1980–81).  She served on the Copyright Committee of the Association of the Bar of the City of New York (1984–86), and the Access to Public Information and Proceedings Committee of the New York State Bar Association (1984–86). Mazur Aff. ¶ 7; Exh. A.

During her association with PFCR, Ms. Mazur attended annual Continuing Legal Education (CLE) training programs in special education law at the Practising Law Institute, as well as numerous CLE events presented by Legal Services for New York (LSNY), including trainings in Impartial Hearing practice and procedure, compensatory education, pendency placements under the IDEA, and post-Impartial Hearing practice.   She also participated in LSNY's Education Law Task Force.  Mazur Aff. ¶ 8.

Prior to 2006, when she handled plaintiffs' Impartial Hearings herein, Ms. Mazur had more than 15 years of experience as a practicing attorney in the State of New York. Under the PFCR attorney's fees policy, which specifies hourly rates for each PFCR attorney based on years of legal practice, her experience placed her in comparability to senior partner level in private practice, with an hourly rate $375.00. Hampden Aff. ¶¶ 17, 19; Mazur Aff. ¶ 9.

## STATUTORY AND REGULATORY FRAMEWORK

The IDEA is designed to ensure that all children with disabilities are provided with a FAPE. See 20 U.S.C. § 1400(d)(1)(A); Schaffer v. Weast, 546 U.S. 49, 51 (2005). In order to satisfy the requirements of the IDEA, a school district must provide each disabled child with "special education and related services," 20 U.S.C. § 1401(9), that are "reasonably calculated to enable the child to receive educational benefits," Bd. of Educ. v. Rowley, 458 U.S. 176, 207 (1982), and provided in the least restrictive environment that meets the child's educational needs, see § 20 U.S.C. § 1412(a)(5)(A). The school district must have an IEP in place for each student with a disability at the beginning of the school year and review that IEP not less than annually. See 20 U.S.C. §§ 1414(d)(2)(A), (d)(4)(A)(i).

To achieve the goal of providing each disabled child with a FAPE, "'[t]he IDEA requires that states [that receive federal funds under the Act] offer parents of a disabled student an array of procedural safeguards designed to help ensure the education of their child.'" A.R. v. New York City Dep't of Educ., 407 F.3d 65, 72 (2d Cir. 2005) (quoting Polera v. Bd. of Educ., 288 F.3d 478, 482 (2d Cir. 2002)) (alteration in A.R.). Under the IDEA, a parent may present a due process complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6)(A). Parents are entitled to litigate their complaint in an "an

impartial due process hearing," § 1415(f)(1)(A), which under New York State law is conducted at the school district level by an IHO, see N.Y. Educ. L. § 4404(1)(a).

As an additional procedural safeguard, the IDEA provides that parents who prevail on their due process complaint are eligible for an award of reasonable attorney's fees and costs to be paid by the school district.   The Act's attorney's fees provision states:   "[I]n any action or proceeding brought under [the IDEA], the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i).[1]  A primary purpose underlying this provision is "the principle that parents or legal representatives of handicapped children must be able to access the full range of available remedies in order to protect their handicapped children's educational rights." S. Rep. No. 99-112, at 17 (1985), reprinted in 1986 U.S.C.C.A.N. 1798, 1806.

The term "action or proceeding" in the IDEA attorney's fees provision has been interpreted to include impartial hearings, rendering fees recoverable for a parent who prevails before an IHO. A.R, 407 F.3d at 75 ("In the context of the IDEA, 'proceeding' refers to, or at least includes, an administrative proceeding."); id. at 76 ("[A]n IHO's decision on the merits in an IDEA proceeding does constitute 'administrative imprimatur.' . . . [W]e conclude that the combination of administrative imprimatur, the change in the legal relationship of the parties arising from it, and subsequent judicial enforceability, render such a winning party a 'prevailing party' . . . ."); G.M. v. New Britain Bd. of Educ., 173 F.3d 77, 81 (2d Cir. 1999) ("If the guardian of a child with a disability successfully enforces his or her rights under the IDEA in an administrative action, the statute authorizes courts to award reasonable attorney fees to the guardian." (citing 20 U.S.C. § 1415(i)(3)(B))).

---

[1] The full text of the IDEA attorney's fees provision is set forth in an Addendum to this memorandum of law.

10

A plaintiff represented by a not-for-profit organization such as PFCR, which provides free legal services to its clients, is entitled to an attorney's fee award on an equal basis with clients who hire private attorneys.  See Blum v. Stenson, 465 U.S. 886, 895 (1984) (stating that fees "are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel"); DiFilippo v. Morizio, 759 F.2d 231, 235 (2d Cir. 1985) ("[H]ourly rates governing fee awards to non-profit legal services organizations are calculated according to prevailing private market rates . . . ."); M.S. o/b/o I.O. v. New York City Bd. of Educ., No. 01 Civ. 4015 (CBM), 2002 WL 31556385, at *5 (S.D.N.Y. Nov. 18, 2002) ("It is well settled that attorneys at not-for-profit organizations representing plaintiffs on a no-fee basis are to be awarded fees at the same rate charged by comparable private attorneys in the relevant community.").  The Senate Report supporting the attorney's fees provision in the predecessor statute to the IDEA states:

> [I]t should be noted that money awarded to publicly funded attorneys is recycled back into the organization for which the attorney works to expand services to low income individuals. Under our present system, offices which provide legal assistance to indigent handicapped children encounter an overwhelming demand for their services, and unfortunately have very limited resources to meet this demand.  It is our feeling that any additional funds made available to expand legal services to our Nation's disabled poor citizens, is money well spent.

S. Rep. No. 99-112, at 17 (1985), reprinted in 1986 U.S.C.C.A.N. 1798, 1806.

11

## ARGUMENT

### PLAINTIFFS ARE PREVAILING PARTIES AND ARE ENTITLED TO AN AWARD OF REASONABLE ATTORNEY'S FEES PURSUANT TO THE IDEA.

"In deciding a petition for attorneys' fees under a federal fee-shifting statute such as the IDEA's, a court must follow a two-step process: 'It must first determine whether the party seeking the award is in fact a prevailing party. If the party is a prevailing party, the court must then determine whether, under the appropriate standard, that party should be awarded attorney's fees.'" O'Shea v. Bd. of Educ., 521 F. Supp. 2d 284, 288 (S.D.N.Y. 2007) (quoting Mr. L. v. Sloan, 449 F.3d 405, 407 (2d Cir. 2006))).

### A.   Plaintiffs Were Prevailing Parties in Their Impartial Hearings Under the IDEA.

A prevailing party under a fee-shifting statute like the IDEA is "one who has succeeded on any significant claim affording it some of the relief sought, either *pendente lite* or at the conclusion of the litigation." Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 791 (1989).[2] "[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Farrar v. Hobby, 506 U.S. 103, 111–12 (1992). "The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement." Id. at 111 (citations omitted).

---

[2] "The IDEA's legislative history demonstrates that Congress intended the term 'prevailing party' to be construed consistently under the IDEA and other fee-shifting statutes." J.C. v. Regional Sch. Dist. 10, 278 F.3d 119, 123–24 (2d Cir. 2002).

"[A] plaintiff who receives IHO-ordered relief on the merits in an IDEA administrative proceeding is a 'prevailing party'" for the purpose of obtaining an attorney's fees award.  A.R., 407 F.3d at 75.

### 1.      Plaintiff B.W. Is a Prevailing Party.

Plaintiff B.W. is a prevailing party, as she obtained IHO-ordered relief on the merits of her IDEA due process complaint and materially altered the legal relationship between herself and the DOE.

### a.      B.W.'s Administrative Proceedings

B.W. filed her March 16, 2006 due process complaint seeking to enforce the rights of her granddaughter, K.S., under the IDEA.  The complaint alleged that the DOE violated the IDEA's child-find provision[3] by failing to refer K.S. for a special education evaluation until October 2005, when she was in the second grade, despite prior knowledge that she attended a preschool program for children with Attention Deficit Hyperactivity Disorder (ADHD).  Exh. C at 1.  The complaint further alleged that the program/placement recommended in K.S.'s December 19, 2005 IEP—general education with five periods of SETSS per week—was not appropriate to meet K.S.'s needs.  Id.  In order to resolve the matter, B.W. requested that the IHO order the DOE to pay for K.S. to attend the Stephen Gaynor School, a private school that specialized in teaching students with learning disabilities, for the 2006–2007 school year.[4]  Id. at 2.

---

[3] The child-find provision of the IDEA requires states to ensure that "[a]ll children with disabilities residing in the State, including children with disabilities who are homeless children or are wards of the State and children with disabilities attending private schools, regardless of the severity of their disabilities, and who are in need of special education and related services, are identified, located, and evaluated." 20 U.S.C. § 1412(a)(3)(A).

[4] If the school district fails to offer a disabled child a FAPE, one form of relief parents may seek in an impartial hearing is payment of the cost of the student's attendance at an appropriate private school.  See Burlington Sch. Comm. v. Dep't of Educ., 471 U.S. 359, 369 (1985) (interpreting IDEA to "confer[] broad discretion on the court" to grant relief that is "'appropriate' in light of the purpose of the Act,") id. at 370, 374 (holding that "appropriate" relief includes an equitable award of tuition reimbursement to parents where (1) the services offered by the school

Over the course of five days of hearings conducted by IHO Theresa Joyner between April and June 2006, the DOE vigorously attempted to defend the appropriateness of its recommended program/placement and to disprove B.W.'s child-find claim.  See Exh. I at 1–3, 8–12; Exh. G, Tr. at 912–13[5] (closing statement by DOE attorney:  "It is our position that the Parent's allegation that [K.S.] was not provided a free appropriate public education for the '05-'06 school year is untrue.  [K.S.] was given a free appropriate education for '05-'06. . . . [The due process complaint alleged] that Child Find wasn't satisfied in this case.  And it is the New York City Department of Education's position that that is completely inaccurate.").

On July 31, 2006, IHO Joyner issued her Findings of Fact and Decision.  Exh. I.  The IHO ruled in B.W.'s favor on the merits of both her child-find and FAPE claims, stating:

> Despite the IEP mandated services and the at-risk services provided previously the child continues to struggle and has been in jeopardy of failing in both the 1st and 2nd grade. . . . The student is at least one grade behind in reading and writing.  The mother and grandmother have consistently informed the teachers, counselors, SETSS providers and principal that the student does not understand what is going on in the classroom and suffers low self-esteem because of her academic problems.
>
> It is undisputed that the student's 1st grade teacher was told that the child had ADHD and that the teacher filled out the questionnaire [for ADHD] early in the 2004-2005 school year. Also, the evidence shows that other school staff members were aware of the ADHD diagnosis but failed to refer the child for a special education evaluation. . . . In this instance, based upon the facts presented, it is clear the child should have been referred to the CSE by the fall of 2004, when the student was in the first grade. Also, it is abundantly clear that even after the evaluation the student was not appropriately placed.  I find that the DOE violated the Child Find provisions of the IDEA and that it has not provided the student a "FAPE" as mandated by IDEA.

---

district are inadequate or inappropriate; and (2) the private school selected by the parents is an appropriate placement for the student).

[5] Exhibit G is the transcript of B.W.'s impartial hearing before IHO Joyner. For the sake of convenience, citations to Exhibit G are to the official pages of the transcript (two transcript pages per exhibit page).

Exh. I at 13 (emphasis added).  The IHO declined to order the DOE to pay for K.S. to attend the Stephen Gaynor School during the 2006–2007 school year, Exh. I at 13–14, but ordered the CSE to reconvene within fifteen days to "recommend an appropriate placement" for K.S., Exh. I at 14. The IHO reasoned that since the hearing concluded prior to the commencement of the 2006–2007 school year, there remained time for the DOE to remedy its denial of FAPE through a CSE review. Exh. I at 13–14.

The CSE held a meeting on August 11, 2006 to review K.S.'s IEP.  See Exh. M. Notwithstanding the IHO's finding that the December 19, 2005 IEP deprived K.S. of a FAPE, the CSE recommended that K.S. remain in exactly the same program/placement—general education with SETSS. Exh. M. at 1.  The August 11, 2006 IEP states outright that the result of the conference was "No Change." Exh. M at 2.

In light of the CSE's refusal to comply with IHO Joyner's directive to "remedy the situation" and "recommend an appropriate placement," Exh. I at 14, and with the commencement of the ten-month 2006–2007 school year rapidly approaching, B.W. filed a second due process complaint on August 16, 2006, Exh. N.  That complaint resulted in a settlement so-ordered by IHO Maria Marchiano on October 25, 2006 pursuant to which the DOE agreed to pay the full tuition for K.S.'s attendance at the Stephen Gaynor School for the 2006–2007 school year.  Exh. O at 3.

**b.    B.W. Prevailed in the Hearing Before IHO Joyner**

IHO Joyner's finding that the DOE denied K.S. a FAPE materially altered the legal relationship between B.W. and the DOE, as it effectively invalidated K.S.'s December 19, 2005 IEP—the IEP challenged by B.W. and defended by the DOE in the hearing.  By ordering that the DOE convene a new CSE meeting and "recommend an appropriate placement" for K.S., Exh. I

15

at 14, IHO Joyner awarded B.W. relief on the merits of her IDEA claims. Had the DOE complied with IHO Joyner's order, it would have directly benefited B.W., as K.S. would have been provided with a FAPE for the 2006–2007 school year. As such, B.W. prevailed in the impartial hearing.

IHO Joyner's decision to remedy the DOE's denial of FAPE by ordering a CSE review, rather than private school tuition payment, does not change the fact that B.W. was the prevailing party. See J.S. v. Crown Point Cent. Sch. Dist., No. 8:06-CV-159 (FJS/DRH), 2007 WL 475418, at **1–3 (N.D.N.Y. Feb. 9, 2007) (holding that parent was prevailing party where IHO concluded that IEP was inadequate to address student's special education needs but denied parent reimbursement for evaluation and supplemental instructional services); id. at *3 ("[T]he Court concludes that, although Plaintiff D.S. may have prevailed on only one of the three issues that the IHO identified in his decision, she prevailed on the most important claim, i.e., the adequacy of her son's IEP."); D.M. v. Bd. of Educ., 296 F. Supp. 2d 400, 402–05 (E.D.N.Y. 2003) (holding that parents were prevailing party where IHO found that student's IEP was inappropriate but declined to order placement at private school suggested by parents, instead ordering CSE to reevaluate student and make new recommendation); id. at 405 ("While the court recognizes that Plaintiffs were not able to place D.M. in the school initially sought, the court holds that sufficient success was attained to achieve prevailing party status."); see also Mavis v. Sobol, 839 F. Supp. 968, 992 (N.D.N.Y. 1994) (holding that parent was prevailing party where district court remanded case to CSE with instructions to develop IEP that addressed student's individual needs and was consistent with IDEA's mainstreaming requirement).

"In measuring a party's degree of success, the Supreme Court and the Second Circuit have interpreted the prevailing party standard generously; a party need not prevail on all issues."

Student X v. New York City Dep't of Educ., No. 07-CV-2316 (NGG)(RER), 2008 WL 4890440,
at * 27 (E.D.N.Y. Oct. 30, 2008) (citing Texas State Teachers Ass'n, 489 U.S. at 792; G.M., 173
F.3d at 81).  IHO Joyner's finding that the DOE deprived K.S. of a FAPE—the IDEA's most
fundamental guarantee—effected a "material alteration of the legal relationship of the parties in a
manner which Congress sought to promote in the fee statute," Texas State Teachers Ass'n, 489
U.S. at 792–93, and rendered B.W. the prevailing party for the purpose of obtaining an award of
reasonable attorney's fees.

### c.   B.W. Subsequently Achieved Additional IHO-Ordered Relief That Was Inextricably Linked to the Hearing Before IHO Joyner.

B.W.'s success in the hearing before IHO Joyner was also a critical factor leading up to
the settlement agreement so-ordered by IHO Marchiano on October 25, 2006.  B.W.'s second
impartial hearing request was premised upon IHO Joyner's finding that the DOE denied K.S. a
FAPE, and the CSE's August 11, 2006 decision to recommend exactly the same
program/placement found inappropriate by IHO Joyner less than two weeks earlier.  Exh. N at 1–
2.  IHO Joyner's order materially altered the legal relationship between B.W. and the DOE in a
manner that led directly to B.W.'s second hearing request, and ultimately to payment by the
DOE for K.S.'s attendance at the Stephen Gaynor School for the 2006–2007 school year.

In Sabatini v. Corning-Painted Post Area School District, 190 F. Supp. 2d 509 (W.D.N.Y.
2001), the U.S. District Court for the Western District of New York found that the parents were
the prevailing party under circumstances markedly similar to those presented in B.W.'s case.

The facts of Sabatini were as follows:  The parents filed two impartial hearing requests.
Id. at 516–17.  The first hearing request resulted in a settlement agreement between the parents
and the school district pursuant to which the district agreed to search for a residential placement

and to offer the student an appropriate educational program. Id. at 516. The district was unable to identify a residential program that would accept the student. Id. The parents secured the student's acceptance at a residential program, but the district refused to place the student there on the ground that it was not included in New York State's list of approved programs. Id. The parents filed a second hearing request, alleging that the district failed to comply with the settlement agreement. Id. at 516–17. The IHO found that the district failed to satisfy its burden of proving that it provided the student with a FAPE and ordered the district to place the student in the residential program identified by the parents, in accordance with the settlement agreement. Id. at 517. The parents filed suit in the district court and obtained a preliminary injunction directing the school district to implement the IHO's decision and to place the student at the residential program identified by the parents. Id. at 517.

With respect to attorney's fees, the school district conceded that the parents were the prevailing party in the second impartial hearing, but claimed that they did not prevail in the first impartial hearing. Id. at 516. The district court rejected the school district's claim, stating:

> I am not persuaded by defendant's argument that plaintiffs should be awarded fees only for work performed on or after May 20, 1999, when plaintiffs made their second request for an impartial hearing. That argument is based on an artificial segmenting of the events leading up to this litigation, which were not entirely discrete and separate from each other, as defendant suggests. Rather, plaintiffs' first hearing request was part of a continuing series of events leading up to plaintiffs' ultimate success in this lawsuit, and it had a direct effect on subsequent proceedings both in this court and before the IHO.

Id. at 517 (emphasis added).[6]

---

[6] The court also rejected the school district's claim that Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources, 532 U.S. 598 (2001), precluded the parents from obtaining an award of attorney's fees for the first impartial hearing. Id. at 519 n. 3. The court concluded:

Here, as in <u>Sabatini</u>, IHO Joyner's decision was "part of a continuing series of events leading up to [B.W.'s] ultimate success," <u>id.</u>, in obtaining the relief she initially sought—payment by the DOE for K.S.'s attendance at the Stephen Gaynor School for the 2006–2007 school year. Had IHO Joyner not found that the DOE denied K.S. a FAPE, and instead concluded that the DOE's recommended program/placement were appropriate, B.W. would have had little if any basis to challenge K.S.'s August 11, 2006 IEP, and almost certainly would not have obtained payment of K.S.'s tuition at the Stephen Gaynor School through a so-ordered settlement. Viewing the administrative proceedings as a whole, it is evident that B.W. was the prevailing party, and that she is eligible for an award of fees for the hearing before IHO Joyner.

### 2.  Plaintiff T.S. Is a Prevailing Party.

It is beyond dispute that T.S. is a prevailing party for the purposes of obtaining an attorney's fees award under the IDEA. T.S. initiated IDEA due process proceedings to seek payment of J.W.'s tuition at the Cooke Center, a private school, for the 2006–2007 school year. Exh. P at 2. The DOE conceded at the impartial hearing that it failed to offer T.S. a FAPE, and the IHO found that the Cooke Center was appropriate for J.W. and that T.S. cooperated with the DOE. Exh. R at 5. The IHO ordered the DOE to issue payment in precisely the amount

---

Defendant's reliance on *Buckhannon* is misplaced. The Supreme Court there held that the "catalyst theory," which posits that plaintiffs are prevailing parties if they achieve their desired result because the lawsuit brought about a voluntary change in the defendant's conduct, is not a permissible basis for an award of attorney's fees under fee-shifting statutes authorizing an award of fees to the prevailing party. The Court in *Buckhannon*, however, held only that the catalyst theory cannot be used to justify an award in the absence of any court-ordered relief, such as a judgment on the merits or a court-ordered consent decree. In the case at bar, however, the court *did* issue an injunction in plaintiffs' favor, and as explained, plaintiffs' first request for an impartial hearing sowed the seeds for that ultimate judicial relief.

<u>Id.</u> (citation omitted) (emphasis in original).

sought—$35,500.00—for J.W.'s attendance at the Cooke Center during the 2006–2007 school year.  Exh. P at 2; Exh. R at 6.

This is more than adequate to satisfy the prevailing-party standard.  T.S. did not merely "succeed[] on any significant claim" or obtain "some of the relief sought," <u>Texas State Teachers Ass'n</u>, 489 U.S. at 791; she prevailed on *all* of her claims and obtained *all* of the relief she sought.  <u>Compare</u> Exh. P <u>with</u> Exh. R.  T.S. is clearly a prevailing party eligible for an award of attorney's fees under the IDEA.

**B.**      **The Hours Expended Were Reasonable.**

The hours spent in plaintiffs' Impartial Hearings were reasonable, necessary, and recorded contemporaneously.  Hours billed included client and witness interviews, investigation of facts, preparation of the written request for hearing detailing the nature of the dispute and the proposed relief, assembly of the documentary evidence and notification to the DOE of intended documents to be offered, preparation and service of subpoenas, Impartial Hearing time on and off the record, attorney travel time to the Impartial Hearings, and preparation of a post-hearing memorandum of law.  Mazur Aff., ¶¶ 21, 40; Exhs. K, T.

All tasks billed were necessary and were efficiently performed, and the time spent in preparing and prosecuting the proceedings was prudent and reasonable.  The fee request contains no "excessive, redundant or otherwise unnecessary hours," <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983), or hours for work on unsuccessful claims clearly severable from successful ones. <u>Quaratino v. Tiffany & Co.</u>, 166 F.3d 422, 425 (2d Cir. 1999).  In accordance with the IDEA, no fees are requested for time spent in development of the student's IEP, CSE meetings, or resolution sessions held as part of the Impartial Hearing process.  <u>See</u>  § 1414(i)(3)(D)(ii)–(iii).

The fee requests were accompanied by "contemporaneous time records that specify for each attorney the date, hours expended, and nature of the work done." New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983).

Plaintiffs' fee requests include timesheets detailing the date of each task performed, the hours for each task computed to tenths of an hour, a description of the work performed by Ms. Mazur, her hourly rate, and the fees requested (hours multiplied by rate).  Exhs. K, T.  The timesheets are recapitulations of contemporaneous time records kept by Ms. Mazur during the course of the administrative proceedings.  Mazur Aff. ¶¶ 25, 43.

The hours billed for plaintiffs B.W. and T.S. were reasonable in relation to the respective administrative proceedings in the two cases.  In the B.W. matter, Ms. Mazur's 58.9 hours (of which only 54.9 were billed) was reasonably related to the prolonged and extenuated nature of the hearings involved:  Five hearing days were required to complete the proceeding, and these hearing appearances alone accounted for 32.5 hours, including attorney travel time.  See Exh. K. The 22.4 additional hours billed by Ms. Mazur, primarily for hearing preparation, was reasonable, amounting to approximately two-thirds of the time required by the hearings themselves.

In the T.S. case, Ms. Mazur billed only 7.7 hours for the entire Impartial Hearing process, of which 3.5 hours included the hearing itself, including attorney travel time.  See Exh. T.

Finally, reasonable billing judgment was exercised with regard to the tasks performed. Two of the tasks included in Ms. Mazur's timesheet for plaintiff B.W.—tasks that took a total of four hours to perform—are marked with the notation "NC," indicating "No Charge."  Mazur Aff. ¶ 22; Exh. K.

The documentation here satisfies this Court's requirements for adequate time records, reasonable billing judgment, and appropriate hourly rates.  See Burr v. Sobol, 748 F. Supp. 97, 100–02 (S.D.N.Y. 1990).

**C.**    **Ms. Mazur's Hourly Rate Was Consistent With Rates Prevailing in the Community and Was Appropriate Under the IDEA.**

Ms. Mazur's hourly rate of $375.00 was dictated by PFCR's written statutory attorney's fees policy that specifies hourly rates for each attorney based on that attorney's experience in the practice of law.  Exh. B.

PFCR's hourly rates are commensurate with rates "prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished," 20 U.S.C. § 1415(i)(3)(C), and rates "prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience," § 1415(i)(3)(F).

In M.S. o/b/o I.O. v. New York City Board of Education, No. 01 Civ. 4015 (CBM), 2002 WL 31556385 (S.D.N.Y. Nov. 18, 2002), this Court approved PFCR's then-current partner level hourly rate of $350.00, id. at *5.   The Second Circuit Court of Appeals affirmed that rate in A.R., 407 F.3d at 83.   Since the M.S. and A.R. decisions, rendered in 2002 and 2005 respectively, PFCR has made modest adjustments in its hourly rates, to reflect increases in prevailing rates charged by education law attorneys in this District, and rates approved by this Court. The rate requested for Ms. Mazur in this application ($375.00) is only $25.00 higher than the $350.00 rate approved in M.S. and A.R.

Further, the partner level rate utilized for Ms. Mazur is comparable to the $350.00–$375.00 range of hourly rates approved by this Court for impartial hearing representation beginning in 1996 in Mr. X v. New York State Education Department, 20 F. Supp. 2d 561, 563–

65 (S.D.N.Y. 1998).  See also R.E. v. New York City Bd. of Educ., No. 02 Civ. 1067 (DC), 2003 WL 42017, at *2 (S.D.N.Y. Jan 6, 2003) (approving partner level hourly rates of $350.00 and $365.00 for Impartial Hearing representation in 1998 and 1999, respectively).

As stated in Ms. Mazur's affidavit, at the time she represented plaintiffs in their Impartial Hearings in 2006, she had been admitted to practice for 33 years (since 1973).  For most of her legal career she specialized in publishing and copyright law, but she gained substantial experience in special education hearings in the six years after she began her volunteer work with PFCR in 2000.  Mazur Aff. ¶¶ 5–9; Exh. A.  The fact that much of Ms. Mazur's career was spent practicing in an area other than education law is no objection to an otherwise comparable hourly rate.  See I.B. v. New York City Dep't of Educ., 336 F.3d 79, 82 (2d Cir. 2003) (rejecting argument that partner level rate is inappropriate because attorney's experience in education law was limited, stating: "We think it entirely obvious that most important legal skills are transferrable, and, unsurprisingly, DOE is unable to identify any caselaw to the contrary."); see also A.R., 407 F.3d at 82–83 (same).  As the United States Supreme Court has found: "[T]he experience, reputation, and ability of the attorneys" are the factors relevant to the determination of a district court's fee award.  Hensley, 461 U.S. at 430 n.3.

Finally, it should be noted that Ms. Mazur's travel time has been billed at one-half her full rate, in accordance with this Court's rule in Mr. X, 20 F. Supp. 2d at 564.  But see C.G. v. New Haven Bd. of Educ., 988 F. Supp. 60, 68 (D. Conn. 1997) (holding that attorney travel time is compensable at full hourly rate).

## D.   **Costs and Fees Incurred in Maintaining This Action.**

The motion schedule in this case anticipates briefing that may continue into January 2010.  The plaintiffs, therefore, respectfully request that they be permitted, at the time their reply

23

papers are due, to submit a supplementary affidavit supporting a request for reasonable costs and fees incident to this district court action.

It is axiomatic that in an action for attorney's fees, the plaintiff is entitled to be compensated for fees incurred in maintaining the action itself.   Hensley, 461 U.S. at 433; Quaratino, 166 F.3d at 428; Gagne v. Maher, 594 F.2d 336, 343 (2d Cir. 1979), aff'd 448 U.S. 122 (1980).  The rule has been consistently applied in IDEA cases.  G.M., 173 F.3d at 84; D.H. by Mr. & Mrs. H. v. Ashford Bd. of Educ., 1 F. Supp. 2d 154, 162 (D. Conn. 1998); Y.O. by Ms. M. v. New Britain Bd. of Educ., 1 F. Supp. 2d 133, 140 (D. Conn. 1998).

For its work in this district court action, PFCR will request approval of its current hourly rates applicable to the attorneys performing services in the case.  The Second Circuit Court of Appeals has held that in an action for attorney's fees and costs under the IDEA, attorneys are not limited to the rates applicable to the administrative proceedings:

> The DOE contends that the hourly rate for the fee dispute in the district court should, as a matter of law, be the same as the rate for representation for the earlier administrative representation because "the fees application is ancillary to the administrative proceeding." . . . We disagree. An award of attorneys' fees under the "lodestar [method] should be based on prevailing market rates, and current rates, rather than historical rates, should be applied in order to compensate for the delay in payment." LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 764 (2d Cir. 1998) (internal quotation marks and citations omitted). A district court awarding attorneys' fees for both administrative proceedings and a subsequent  fee dispute therefore need not determine the fees for the later action on the basis of the earlier administrative proceeding.

A.R., 407 F.3d at 83.

## CONCLUSION

WHEREFORE, for the reasons stated herein and in all the papers and proceedings had herein, plaintiffs respectfully request the Court to award attorney's fees to PFCR in the total

amount of $21,155.00 for plaintiffs' administrative proceedings, and such fees and costs incident to this district court action as the Court may find reasonable.

Dated:      New York, New York
            November 23, 2009

Respectfully submitted,

MICHAEL D. HAMPDEN (MH 2359)
PARTNERSHIP FOR CHILDREN'S RIGHTS
271 Madison Avenue, 17th Floor
New York, NY 10016
(212) 683-7999 ext. 226
Fax (212) 683-5544
mhampden@pfcr.org
ERIN MCCORMACK-HERBERT,
        On the Memorandum of Law

## ADDENDUM

### ATTORNEY'S FEES PROVISION OF THE IDEA
### 20 U.S.C. § 1415(i)(3)

(3) Jurisdiction of district courts; attorneys' fees

(A) In general

The district courts of the United States shall have jurisdiction of actions brought under this section without regard to the amount in controversy.

(B) Award of attorneys' fees

(i) In general

In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs--

**(I)** to a prevailing party who is the parent of a child with a disability;

**(II)** to a prevailing party who is a State educational agency or local educational agency against the attorney of a parent who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation, or against the attorney of a parent who continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation; or

**(III)** to a prevailing State educational agency or local educational agency against the attorney of a parent, or against the parent, if the parent's complaint or subsequent cause of action was presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation.

(ii) Rule of construction

Nothing in this subparagraph shall be construed to affect section 327 of the District of Columbia Appropriations Act, 2005.

(C) Determination of amount of attorneys' fees

Fees awarded under this paragraph shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished. No bonus or multiplier may be used in calculating the fees awarded under this subsection.

(D) Prohibition of attorneys' fees and related costs for certain services

(i) In general

Attorneys' fees may not be awarded and related costs may not be reimbursed in any action or proceeding under this section for services performed subsequent to the time of a written offer of settlement to a parent if--

**(I)** the offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure or, in the case of an administrative proceeding, at any time more than 10 days before the proceeding begins;

**(II)** the offer is not accepted within 10 days; and

**(III)** the court or administrative hearing officer finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement.

(ii) IEP Team meetings

Attorneys' fees may not be awarded relating to any meeting of the IEP Team unless such meeting is convened as a result of an administrative proceeding or judicial action, or, at the discretion of the State, for a mediation described in subsection (e) of this section.

(iii) Opportunity to resolve complaints

A meeting conducted pursuant to subsection (f)(1)(B)(i) of this section shall not be considered--

**(I)** a meeting convened as a result of an administrative hearing or judicial action; or

**(II)** an administrative hearing or judicial action for purposes of this paragraph.

(E) Exception to prohibition on attorneys' fees and related costs

Notwithstanding subparagraph (D), an award of attorneys' fees and related costs may be made to a parent who is the prevailing party and who was substantially justified in rejecting the settlement offer.

(F) Reduction in amount of attorneys' fees

Except as provided in subparagraph (G), whenever the court finds that--

**(i)** the parent, or the parent's attorney, during the course of the action or proceeding, unreasonably protracted the final resolution of the controversy;

**(ii)** the amount of the attorneys' fees otherwise authorized to be awarded unreasonably exceeds the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience;

**(iii)** the time spent and legal services furnished were excessive considering the nature of the action or proceeding; or

**(iv)** the attorney representing the parent did not provide to the local educational agency the appropriate information in the notice of the complaint described in subsection (b)(7)(A) of this section,

the court shall reduce, accordingly, the amount of the attorneys' fees awarded under this section.

(G) Exception to reduction in amount of attorneys' fees

The provisions of subparagraph (F) shall not apply in any action or proceeding if the court finds that the State or local educational agency unreasonably protracted the final resolution of the action or proceeding or there was a violation of this section.

A-3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
B.W. o/b/o K.S, a minor, and
T.S. o/b/o J.W., a minor,

                      Plaintiffs,

     - v -

NEW YORK CITY DEPARTMENT
OF EDUCATION,
                   Defendant.
------------------------------------------------------X

Docket No.
09 CV 9986 (RMB) (HBP)

CERTIFICATE OF
SERVICE BY MAIL

       The undersigned hereby certifies under penalty of perjury that on the 23rd day of
November, 2009, he mailed via FedEx Overnight Mail, the attached Plaintiffs' Memorandum of
Law in support of Motion for Summary Judgment, to counsel for the defendant New York City
Department of Education:

Michael A. Cardozo
Corporation Counsel of the City of New York
New York City Law Department
100 Church Street, Room 2-165
New York NY 10007
Attn: D. Alan Rosinus, Esq.
Attorney for Defendant

Dated:      New York, New York
            November 23, 2009

_____
MICHAEL D. HAMPDEN (MH 2359)
PARTNERSHIP FOR CHILDREN'S RIGHTS
Attorney for Plaintiff
271 Madison Avenue, 17th Floor
New York, NY 10016
(212) 683-7999, ext. 226
Fax: (212) 683-5544
Email: mhampden@pfcr.org