UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

B.W. o/b/o K.S., a minor;          :
T.S. o/b/o J.W., a minor;
                                   :
               Plaintiffs,
                                   :    09 Civ. 6686 (HBP)
     -against-
                                   :    OPINION
NEW YORK CITY DEPARTMENT                AND ORDER
OF EDUCATION,                      :

               Defendant.          :

----------------------------------X


          PITMAN, United States Magistrate Judge:


I.   Introduction

          By notices of motion dated November 23, 2009 (Docket
Items 13 and 14), plaintiffs move, pursuant to Federal Rule of
Civil Procedure 56 and 20 U.S.C. § 1415(i)(3), for summary
judgment awarding attorney's fees and costs of $21,155.00.  For
the reasons set forth below, plaintiffs' motions are granted.

II.  Facts

          Plaintiffs commenced this action seeking attorney's
fees incurred in two administrative proceedings under the Indi-
viduals with Disabilities Education Act ("IDEA"), as amended by
the Individuals with Disabilities Education Improvement Act, 20
U.S.C. § 1400 et seq. (Amended Complaint ("Am. Compl.")).

Since these motions were filed, defendant has conceded that plaintiff T.S. was a prevailing party and has paid the requested fees of $2,512.50 in connection with T.S.'s case (Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment ("Def.'s Mem. in Opp.") at 1-2; Plaintiffs' Reply Memorandum of Law ("Pls.' Reply Mem.") at 1). Accordingly, the only remaining issue in dispute involves plaintiffs' request for $18,642.50 in attorney's fees in connection with the B.W. o/b/o K.S. action (Pls.' Reply Mem. at 1; see Am. Compl. ¶ 22).

K.S. was born on October 26, 1998 (Individualized Education Program for K.S., dated December 19, 2005, annexed as Ex. D to Exhibits in Support of Plaintiffs' Motion for Summary Judgment Awarding Attorney's Fees and Costs ("12/19/05 IEP")). K.S.'s grandmother, B.W., took custody of her when she was two-and-a-half months old, and B.W. continues to be her legal guardian (Transcript of Hearings, annexed as Ex. G to Exhibits in Support of Plaintiffs' Motion for Summary Judgment Awarding Attorney's Fees and Costs ("Tr.")[1] at 105; Affidavit of Marilyn C. Mazur, sworn to November 20, 2009 ("Mazur Aff.") ¶ 10).

B.W. became aware that K.S. had Attention Deficit Disorder ("ADD") or Attention Deficit Hyperactivity Disorder

---

[1]Each page of Exhibit G contains two pages of transcript, reproduced in a reduced size.  Citations to the transcript refer to the official transcript page.

("ADHD") when K.S. was in preschool (Tr. 106).  In March 2002, K.S. underwent ADD-related testing at Columbia Presbyterian Hospital and became involved in ADHD treatment and studies at the affiliated New York State Psychiatric Institute (Tr. 106-07). B.W. attempted, without success, to have K.S. evaluated for special education services while she was in preschool (Tr. 110-11).  Early in the 2004-2005 school year, B.W. told K.S.'s first grade teacher that K.S. had ADHD and asked the teacher to complete a questionnaire for the ADHD study in which K.S. was participating (Tr. 108-09, 115, 189-90, 356-57).  After B.W. expressed concerns about K.S.'s education to the teacher's supervisor, the school's guidance counselor and her local city council member, and after K.S.'s mother asked for assistance from the Pupil Personnel Committee and the guidance counselor and submitted an evaluation from Columbia University diagnosing K.S. with ADHD, K.S.'s school provided her with about a month of sporadic "at-risk" Special Education Teacher Support Services ("SETSS") in May, and possibly early June, 2005 (Impartial Hearing Officer's Findings of Fact and Decision, dated July 31, 2006, annexed as Ex. I to Exhibits in Support of Plaintiffs' Motion for Summary Judgment Awarding Attorney's Fees and Costs, also annexed to Answer as Ex. A ("IHO Decision") at 4, 6-7; <u>see</u> Tr. 182-83, 252-53, 256-60, 275-76, 281-82, 745-46).

K.S. has difficulties with language skills, listening comprehension, reading, writing, focusing and completing assignments (Tr. 113, 115, 208-11, 244-45, 352-54, 766).  At B.W.'s request, the Department of Education ("DOE") referred K.S. for evaluation in October 2005, and on December 19, 2005 the Committee on Special Education ("CSE") convened and prepared an Individualized Education Program ("IEP") for K.S. (12/19/05 IEP; Tr. 119).  The IEP classified K.S. as having a learning disability and recommended that she participate in a general education program with supplemental SETSS, which would mean she would be removed from regular classes for five periods per week to attend a class of eight students (12/19/05 IEP at 1; Mazur Aff. ¶ 12; see Impartial Hearing Request, dated March 16, 2006, annexed as Ex. C to Exhibits in Support of Plaintiffs' Motion for Summary Judgment Awarding Attorney's Fees and Costs ("First Impartial Hearing Request") at 1).  The school implemented this plan starting in January 2006 (12/19/05 IEP at 2; Tr. 118, 127).

On March 16, 2006, B.W., through her attorney Marilyn Mazur of Partnership for Children's Rights ("PFCR"), filed a due process complaint requesting an Impartial Hearing on the validity and appropriateness of the December 19, 2005 IEP (First Impartial Hearing Request; Mazur Aff. ¶¶ 11-12).  In B.W.'s hearing request, she argued that defendant had violated the IDEA's "child find" provision by waiting until October 2005 to evaluate K.S.

despite school personnel's longstanding knowledge that K.S. had ADHD, and that the IEP recommending general education combined with SETSS failed to provide K.S. with a free appropriate public education ("FAPE") as required by the IDEA[2] (First Impartial Hearing Request at 1). B.W. contended in the letter that K.S. "requires a small, structured classroom with a [low] student-teacher ratio so that she can receive the instruction that will enable her to access education despite her disability" (First Impartial Hearing Request at 1). Specifically, B.W. sought an order compelling defendant to pay K.S.'s tuition at Stephen Gaynor School, a private, non-approved, special education school in which B.W. enrolled K.S. for the 2006-2007 school year (First Impartial Hearing Request at 2; IHO Decision at 3; see Mazur Aff. ¶ 13; Am. Compl. ¶ 11).

Impartial Hearing Officer ("IHO") Theresa R. Joyner conducted hearings on April 27, May 24, June 9, June 13 and June 19, 2006 (IHO Decision at cover page, 1-2; Tr. 1, 82, 328, 553, 737; Mazur Aff. ¶ 16). On July 31, 2006, IHO Joyner issued a decision concluding that, because several school personnel were aware that K.S. had ADHD, "it is clear the child should have been referred to the CSE by the fall of 2004, when the student was in

---

[2]B.W.'s hearing request did not, as plaintiffs allege (Am. Compl. ¶ 11), explicitly seek an order declaring that defendant had violated the IDEA's "child find" provision or an order declaring that defendant had failed to provide K.S. with a FAPE (First Impartial Hearing Request).

the first grade" (IHO Decision at 11-12).  She also stated that "it is abundantly clear that even after the evaluation the student was not appropriately placed" (IHO Decision at 12). Accordingly, IHO Joyner found that defendant violated the "child find" provision of the IDEA and that defendant failed to provide K.S. a FAPE in violation of the IDEA (IHO Decision at 12-13). However, she found B.W.'s request that defendant pay K.S.'s private school tuition premature because there was still time for defendant to "remedy the situation" through other means, and instead ordered that the CSE reconvene within fifteen days of the decision in order to "recommend an appropriate placement for this student with consideration given to the private evaluations presented at the hearings" (IHO Decision at 13-14).

The CSE reconvened on August 11, 2006 and, inexplicably, reissued the same IEP that IHO Joyner had found denied K.S. a FAPE -- general education combined with five periods of SETSS per week (Individualized Education Program for K.S., dated August 11, 2006, annexed as Ex. M to Exhibits in Support of Plaintiffs' Motion for Summary Judgment Awarding Attorney's Fees and Costs ("8/11/06 IEP") at 1-2, 7; Mazur Aff. ¶ 26).  The "conference result" field on the new IEP was marked "No Change" (8/11/06 IEP at 2; Mazur Aff. ¶ 26).

Because the CSE did nothing to correct the deficient IEP in response to IHO Joyner's decision, on August 16, 2006,

B.W. requested another Impartial Hearing on an expedited basis
(Expedited Impartial Hearing Request, dated August 16, 2006,
annexed as Ex. N to Exhibits in Support of Plaintiffs' Motion for
Summary Judgment Awarding Attorney's Fees and Costs ("Second
Impartial Hearing Request") at 1-2; Mazur Aff. ¶ 27).  In this
request B.W. noted that IHO Joyner had found defendant violated
the "child find" provision of the IDEA and denied K.S. a FAPE,
and again requested an order compelling defendant to pay K.S.'s
tuition for the 2006-2007 school year at Stephen Gaynor School
(Second Impartial Hearing Request at 1-2; see Mazur Aff. ¶ 27).

        IHO Maria L. Marchiano was appointed to hear the matter
and held hearings on September 25, October 16, October 17 and
October 20, 2006 (Statement of Agreement and Order by IHO
Marchiano, dated October 25, 2006, annexed as Ex. O to Exhibits
in Support of Plaintiffs' Motion for Summary Judgment Awarding
Attorney's Fees and Costs ("K.S. Settlement Agreement") at 1-3;
Mazur Aff. ¶ 28).  On the last day of the hearing defendant
withdrew its opposition to B.W.'s claims and agreed to pay the
full amount of K.S.'s tuition to the Stephen Gaynor School for
2006-2007 (K.S. Settlement Agreement at 3; Mazur Aff. ¶ 28).  IHO
Marchiano issued a Statement of Agreement and Order which ordered
"that the District pay for the child's tuition for the Stephen
Gaynor School for the school year 2006-2007 in the amount of
$37,900.00" (K.S. Settlement Agreement at 3).  Defendant then

paid the full amount for K.S.'s 2006-2007 tuition (Mazur Aff. ¶ 31).  Defendant also paid PFCR attorney's fees in connection with the second, but not the first, Impartial Hearing (Mazur Aff. ¶ 31).

B.W. was represented in both Impartial Hearings by Marilyn Mazur, a volunteer attorney with PFCR (Affidavit of Michael D. Hampden, sworn to November 23, 2009 ("Hampden Aff.") ¶ 2; Mazur Aff. ¶¶ 3, 10; Am. Compl. ¶ 9).  PFCR, formerly Legal Services for Children, Inc., is a "charitable, not-for-profit organization authorized by the Appellate Division of the Supreme Court of the State of New York to provide legal services without fee to low-income families in civil matters involving the rights of children" (Am. Compl. ¶ 10; Hampden Aff. ¶ 4; see Mazur Aff. ¶ 3).  PFCR does not charge attorney's fees to its clients (Hampden Aff. ¶ 5), but, in addition to other funding sources, relies "on the recovery of statutory attorney's fees allowed by federal law to provide operating revenue for the ongoing work of the organization" (Hampden Aff. ¶ 6).  B.W.'s retainer agreement with PFCR provided that PFCR would not charge B.W. for its services, but stated that PFCR could keep any fees or costs it was awarded by a court (Am. Compl. ¶ 18; see Hampden Aff. ¶ 13; Mazur Aff. ¶ 23).  B.W. authorized PFCR to request and receive attorney's fees in conjunction with her IDEA proceedings and to receive them on her behalf (B.W. Authorization to Accept Settle-

ment, annexed as Ex. L to Exhibits in Support of Plaintiffs'
Motion for Summary Judgment Awarding Attorney's Fees and Costs;
Mazur Aff. ¶ 24; Hampden Aff. ¶ 14).

On January 2, 2007, PFCR made a demand on defendant for
attorney's fees under the IDEA, 20 U.S.C. § 1415(i)(3)(B), in
connection with the initial Impartial Hearing decision by IHO
Joyner (PFCR Request for Attorney's Fees and Costs, dated January
2, 2007, annexed as Ex. J to Exhibits in Support of Plaintiffs'
Motion for Summary Judgment Awarding Attorney's Fees and Costs
("PFCR Request for Attorney's Fees and Costs"); Mazur Aff. ¶ 19;
Hampden Aff. ¶ 9; Am. Compl. ¶ 16).  PFCR requested $18,642.50
for 58.9 hours of work (Marilyn Mazur Timesheet for K.S., initi-
ated February 16, 2006, annexed as Ex. K to Exhibits in Support
of Plaintiffs' Motion for Summary Judgment Awarding Attorney's
Fees and Costs ("Mazur Timesheet"); PFCR Request for Attorney's
Fees and Costs; Mazur Aff. ¶ 19; Hampden Aff. ¶ 29).  PFCR's
request was accompanied by a chronological log of hours expended,
computed to the tenth of an hour (Mazur Timesheet; Hampden Aff.
¶¶ 11, 25; Am. Compl. ¶ 17; see Mazur Aff. ¶ 20).  Mazur billed
for time spent investigating facts, interviewing her client and
witnesses, communicating with the DOE and the school, preparing
the Impartial Hearing request, assembling the documentary evi-
dence, preparing and serving subpoenas, drafting a post-hearing
memorandum of law, and preparing for, traveling to and attending

9

the Impartial Hearings (Mazur Timesheet; Mazur Aff. ¶ 21; see Mazur Aff. ¶¶ 11, 14, 15, 16, 17, 25).  Mazur did not bill for time spent reviewing and correcting hearing transcripts or for time spent preparing a first draft of her post-hearing memorandum of law (Mazur Timesheet; Mazur Aff. ¶ 22).  Nor were any costs billed (Hampden Aff. ¶ 27; see Mazur Timesheet).

With the exception of travel time, which was billed at half the normal rate (Mazur Timesheet; Hampden Aff. ¶ 27), Ms. Mazur's time was billed at $375.00 per hour, the rate provided by PFCR's written attorney's fees policy for an attorney at the "senior partner" level (an attorney who has been practicing for more than fifteen years) (Mazur Timesheet; PFCR Revised Attorney's Fees Policy, annexed as Ex. B to Exhibits in Support of Plaintiffs' Motion for Summary Judgment Awarding Attorney's Fees and Costs; Hampden Aff. ¶¶ 17, 19-20; see Mazur Aff. ¶ 9).  Ms. Mazur had been practicing as an attorney in New York since 1973 and had been a volunteer attorney with PFCR since 2000 (Marilyn Mazur C.V., annexed as Ex. A to Exhibits in Support of Plaintiffs' Motion for Summary Judgment Awarding Attorney's Fees and Costs; Mazur Aff. ¶¶ 3, 5-9).

Defendant did not make payment in response to plaintiffs' January 2, 2007 demand for fees, nor did it offer any explanation reflected in the record for refusing to pay plaintiff's fees (Am. Compl. ¶ 23; Hampden Aff. ¶ 10; Mazur Aff.

¶ 31).  Plaintiffs commenced this action on July 28, 2009 (Docket
Item 1), and the parties consented to my exercising jurisdiction
over the action on September 21, 2009 (Docket Item 8).  On
November 23, 2009, plaintiffs B.W. and T.S. moved for summary
judgment awarding a total of $21,155.00 in attorney's fees in
connection with their administrative proceedings (Docket Items 13
and 14).  As noted above, defendants later paid the requested
$2,512.50 in fees with regard to the T.S. o/b/o J.W. action, but
continued to dispute the propriety of fees with regard to the
first hearing in the B.W. o/b/o K.S. action (Def.'s Mem. in Opp.
at 1-2; Pls.' Reply Mem. at 1; see Hampden Aff. ¶ 24).

        Defendant argues that B.W. was not a prevailing party
with regard to her first administrative hearing (Def.'s Mem. in
Opp. at 2, 5-8), and that even if B.W. were a prevailing party,
she should not recover fees in the full amount with regard to the
first administrative hearing because she did not receive the
relief that she sought (Def.'s Mem. in Opp. at 2, 14-15).
Defendant does not dispute the reasonableness of the fees re-
quested, but only whether, or to what degree, B.W. is entitled to
fees in connection with her Impartial Hearing before IHO Joyner
(Def.'s Mem. in Opp. at 15 n.5).

        Plaintiffs respond that B.W. was a prevailing party in
the administrative proceedings before IHO Joyner, and, addition-
ally, that the full relief she later obtained as a result of the

11

settlement ordered by IHO Marchiano was inextricably linked to these proceedings (Memorandum of Law in Support of Motion for Summary Judgment Awarding Attorney's Fees and Costs ("Pls.' Mem. in Support") at 2-9; Pls.' Reply Mem. at 2-19; Hampden Aff. ¶ 8). Plaintiffs also maintain that the relief B.W. achieved entitles her to the entire fee award they requested (Pls.' Reply Mem. at 12-15).

III.  <u>Analysis</u>

    A.  Applicable Legal
       <u>Standards</u>

      1.  The IDEA
        <u>Generally</u>

     The IDEA is designed "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs."  20 U.S.C. § 1400(d)(1)(A); see <u>Schaffer v. Weast</u>, 546 U.S. 49, 51 (2005); <u>A.R. ex rel. R.V. v. N.Y. City Dep't of Educ.</u>, 407 F.3d 65, 72 (2d Cir. 2005).  "A 'free and appropriate' education is one that benefits a child's particular educational needs with a program specifically tailored to that child."  <u>D.M. ex rel. G.M. v. Bd. of Educ., Center Moriches Union Free Sch. Dist.</u>, 296 F. Supp. 2d 400, 403 (E.D.N.Y. 2003).  The IDEA requires that, as a condition to

receiving federal funds, a school district ensure that a disabled child receives a free and appropriate public education ("FAPE") through an Individual Education Plan ("IEP"), which "must include an assessment of the child's current educational performance, must articulate measurable educational goals, and must specify the nature of the special services that the school will provide." Schaffer v. Weast, supra, 546 U.S. at 53; Student X v. N.Y. City Dep't of Educ., 07 Civ. 2316 (NGG)(RER), 2008 WL 4890440 at *1-*2 (E.D.N.Y. Oct. 30, 2008); see 20 U.S.C. § 1414(d)(1)(A).

The IDEA also requires states to "identif[y], locate[], and evaluate[]" any "children with disabilities residing in the State . . . regardless of the severity of their disabilities, and who are in need of special education and related services."  20 U.S.C. § 1412(a)(3)(A).  This is referred to as the "child find" provision.  See 20 U.S.C. § 1412(a)(3).

To make sure disabled children are provided with a FAPE, "[t]he IDEA requires that states offer parents of a dis-abled student an array of procedural safeguards designed to help ensure the education of their child." Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist., 288 F.3d 478, 482 (2d Cir. 2002).  The IDEA allows parents and students to file a due process complaint and request an impartial due process hearing conducted by an IHO "with respect to any matter relating to the identification, evaluation, or educational placement of the

13

child, or the provision of a free appropriate public education to such child."  20 U.S.C. § 1415(b)(6)(A); see A.R. ex rel. R.V. v. N.Y. City Dep't of Educ., supra, 407 F.3d at 72.

        2.  Attorney's Fees

        "In any action or proceeding brought under [the IDEA], the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability."  20 U.S.C. § 1415(i)(3)(B)(i); D.M. ex rel. G.M. v. Bd. of Educ., Center Moriches Union Free Sch. Dist., supra, 296 F. Supp. 2d at 403. "Proceedings" brought under the IDEA include IHO hearings.  A.R. ex rel. R.V. v. N.Y. City Dep't of Educ., supra, 407 F.3d at 75; see 20 U.S.C. § 1415(i)(3)(B)(i).

        When considering a claim for attorney's fees made under a fee-shifting statute such as the IDEA,

> a district court must ordinarily make two determina-
> tions.  It must first determine whether the party
> seeking the award is in fact a prevailing party. If the
> party is a prevailing party, the court must then deter-
> mine whether, under the appropriate standard, that
> party should be awarded attorney's fees.

Mr. L. v. Sloan, 449 F.3d 405, 407 (2d Cir. 2006); accord O'Shea v. Bd. of Educ. of Poughkeepsie City Sch. Dist., 521 F. Supp. 2d 284, 288 (S.D.N.Y. 2007) (Conner, D.J.).

a.  Prevailing Party

"A party attains 'prevailing party' status if that
party attains success on any significant issue in the litigation
that achieves some of the benefit sought in bringing the litiga-
tion, and the manner of the resolution of the dispute constitutes
a change in the legal relationship of the parties."  Mrs. M. v.
Tri-Valley Cent. Sch. Dist., 363 F. Supp. 2d 566, 569 (S.D.N.Y.
2002) (McMahon, D.J.); see also Farrar v. Hobby, 506 U.S. 103,
111-12 (1992); Texas State Teachers Ass'n v. Garland Indep. Sch.
Dist., 489 U.S. 782, 791-92 (1989); G.M. ex rel. R.F. v. New
Britain Bd. of Educ., 173 F.3d 77, 81 (2d Cir. 1999).  Not only
must a prevailing party achieve a "material alteration" of the
legal relationship between the parties, but that alteration must
be judicially sanctioned.  Buckhannon Bd. & Care Home, Inc. v. W.
Va. Dep't of Health & Human Res., 532 U.S. 598, 605 (2001); A.R.
ex rel. R.V. v. N.Y. City Dep't of Educ., supra, 407 F.3d at 67;
Student X v. N.Y. City Dep't of Educ., supra, 2008 WL 4890440 at
*26-*27.  A court-ordered settlement or consent decree provides
such a judicial sanction and, thus, may support an award of
attorney's fees.  Buckhannon Bd. & Care Home, Inc. v. W. Va.
Dep't of Health & Human Res., supra, 532 U.S. at 603; Farrar v.
Hobby, supra, 506 U.S. at 111.

In the context of an IDEA proceeding, IHO-ordered
relief on the merits alters the legal relationship between the

15

parties and thus confers an "administrative imprimatur" suffi-
cient to support an award of attorney's fees.  Mr. L. v. Sloan,
supra, 449 F.3d at 407; A.R. ex rel. R.V. v. N.Y. City Dep't of
Educ., supra, 407 F.3d at 75-77; G.M. ex rel. R.F. v. New Britain
Bd. of Educ., supra, 173 F.3d at 80-81; D.M. ex rel. G.M. v. Bd.
of Educ., Center Moriches Union Free Sch. Dist., 296 F. Supp. 2d
at 406; M.S. o/b/o I.O. v. N.Y. City Bd. of Educ., 01 Civ. 4015
(CBM), 01 Civ. 10871 (CBM), 01 Civ. 10872 (CBM), 2002 WL 31556385
at *3 (S.D.N.Y. Nov. 18, 2002) (Motley, D.J.).  "Even a settle-
ment placed on the record of an administrative proceeding consti-
tutes sufficient 'judicial imprimatur' to qualify."  Mrs. M. v.
Tri-Valley Cent. Sch. Dist., supra, 363 F. Supp. 2d at 569;
accord D.M. ex rel. G.M. v. Bd. of Educ., Center Moriches Union
Free Sch. Dist., supra, 296 F. Supp. 2d at 405-06.

   Also relevant is whether the relief obtained was the
result of the proceedings.  The Second Circuit has stated that a
party seeking fees under the IDEA "'prevails' whenever (1) the
party obtains relief, and (2) there is a causal connection
between the filing of the litigation or administrative proceeding
and the relief obtained."  J.C. v. Reg'l Sch. Dist. 10, Bd. of
Educ., 278 F.3d 119, 123 (2d Cir. 2002); accord Wheeler v.
Towanda Area Sch. Dist., 950 F.2d 128, 131 (3d Cir. 1991); G.M.
ex rel. R.F. v. New Britain Bd. of Educ., supra, 173 F.3d at 81;
D.M. ex rel. G.M. v. Bd. of Educ., Center Moriches Union Free

Sch. Dist., supra, 296 F. Supp. 2d at 403-04.  The relief ob-
tained is causally connected to the proceeding "[w]here the
litigation or administrative proceeding is a 'material contribut-
ing factor in bringing about the events that resulted in obtain-
ing the desired relief.'"  K.R. ex rel. M.R. v. Bd. of Educ. of
Brentwood Union Free Sch. Dist., 66 F. Supp. 2d 444, 450
(E.D.N.Y. 1999); see Wheeler v. Towanda Area Sch. Dist., supra,
950 F.2d at 132; G.M. ex rel. R.F. v. New Britain Bd. of Educ.,
supra, 173 F.3d at 81.  Although courts have in the past found
the causal connection inquiry to be "particularly relevant in
assessing whether a plaintiff has 'prevailed' in a case resolved
by settlement," including private settlement, G.M. ex rel. R.F.
v. New Britain Bd. of Educ., supra, 173 F.3d at 81; accord K.R.
ex rel. M.R. v. Bd. of Educ. of Brentwood Union Free Sch. Dist.,
supra, 66 F. Supp. 2d at 449-50 (E.D.N.Y. 1999), post-Buckhannon,
this approach is only valid to the extent it legitimates attor-
ney's fees for relief that carries a judicial (or administrative)
imprimatur.[3]  D.M. ex rel. G.M. v. Bd. of Educ., Center Moriches

---

[3]In Buckhannon,

> the Supreme Court rejected the "catalyst" theory relied
> upon by several circuit courts of appeal to justify an
> award of fees.  Pursuant to that theory, fees were
> awarded if the action or proceeding acted as a catalyst
> to bring about a voluntary change in the defendant's
> conduct.  Rejecting the catalyst theory, the Supreme
> Court held that an award of fees was appropriate only
> if there had been a court-ordered change in the
> (continued...)

Union Free Sch. Dist., supra, 296 F. Supp. 2d at 404 ("To qualify
for an award of statutory fees, however, the alteration in the
parties' relationship must have occurred because of a disposition
that is judicially sanctioned."); see J.C. v. Reg'l Sch. Dist.
10, Bd. of Educ., supra, 278 F.3d at 124-25.

"[T]he prevailing party standard has been interpreted
generously by the Supreme Court and the Second Circuit" in terms
of the degree of relief required.  D.M. ex rel. G.M. v. Bd. of
Educ., Center Moriches Union Free Sch. Dist., supra, 296 F. Supp.
2d at 403-04; see Texas State Teachers Ass'n v. Garland Indep.
Sch. Dist., supra, 489 U.S. at 792; G.M. v. New Britain Bd. of
Educ., supra, 173 F.3d at 81.  To qualify for attorney's fees, "a
party need not prevail on all issues," Student X v. N.Y. City
Dep't of Educ., supra, 2008 WL 4890440 at *26-*27, but rather
must "succeed on any significant issue in litigation which
achieves some of the benefit the parties sought in bringing the
suit."  Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,
supra, 489 U.S. at 789 (internal quotations and citation omit-

---

³(...continued)
    parties' relationship, such as a change [brought] about
    by a judgment after trial or a consent decree.  A
    private settlement, on the other hand, was held to lack
    the necessary "judicial imprimatur" necessary to a
    holding that a party has prevailed so as to justify an
    award of statutory fees.  Buckhannon, 532 U.S. at 605,
    121 S.Ct. 1835.

D.M. ex rel. G.M. v. Bd. of Educ., Center Moriches Union Free
Sch. Dist., supra, 296 F. Supp. 2d at 404.

ted); accord G.M. ex rel. R.F. v. New Britain Bd. of Educ.,
supra, 173 F.3d at 81; Student X v. N.Y. City Dep't of Educ.,
supra, 2008 WL 4890440 at *27; D.M. ex rel. G.M. v. Bd. of Educ.,
Center Moriches Union Free Sch. Dist., supra, 296 F. Supp. 2d at
404; see Farrar v. Hobby, supra, 506 U.S. at 109.  "A 'purely
technical or de minimis' victory, however, will not qualify a
plaintiff as a prevailing party."  Student X v. N.Y. City Dep't
of Educ., supra, 2008 WL 4890440 at *27, quoting Texas State
Teachers Ass'n v. Garland Indep. Sch. Dist., supra, 489 U.S. at
789.

> b.  Potential Reduction
>    in Fees

Attorney's fees in IDEA actions are calculated using
the "'lodestar' approach," in which the fee is derived "by
multiplying the number of hours reasonably expended on the
litigation times a reasonable hourly rate."[4]  Sabatini v. Corn-

---

[4]Fees awarded under the IDEA "shall be based on rates
prevailing in the community in which the action or proceeding
arose for the kind and quality of services furnished."  20 U.S.C.
§ 1415(i)(3)(C).  The court may reduce an attorney's fees award
"whenever the court finds that . . . the amount of the attorneys'
fees otherwise authorized to be awarded unreasonably exceeds the
hourly rate prevailing in the community for similar services by
attorneys of reasonably comparable skill, reputation, and
experience [or] the time spent and legal services furnished were
excessive considering the nature of the action or proceeding."
20 U.S.C. § 1415(i)(3)(F).  Defendant does not dispute the
reasonableness of the fees requested here (Def.'s Mem. in Opp. at
15 n.5).

ing-Painted Post Area Sch. Dist., 190 F. Supp. 2d 509, 513
(W.D.N.Y. 2001); accord I.B. v. N.Y. City Dep't of Educ., 336
F.3d 79, 80 (2d Cir. 2003) (per curiam); G.M. ex rel. R.F. v. New
Britain Bd. of Educ., supra, 173 F.3d at 84; M.S. o/b/o I.O. v.
N.Y. City Bd. of Educ., supra, 2002 WL 31556385 at *4.  Although
"[t]here is . . . a strong presumption that the lodestar figure
represents a reasonable fee," G.M. ex rel. R.F. v. New Britain
Bd. of Educ., supra, 173 F.3d at 84; see Quaratino v. Tiffany &
Co., 166 F.3d 422, 425 (2d Cir. 1999), a court may reduce the
award based on the results obtained.  Hensley v. Eckerhart, 461
U.S. 424, 434 (1983).  A reduction may be appropriate where a
party lost on claims unrelated to the ones on which he prevailed
and where the overall level of success is low.  Hensley v.
Eckerhart, supra, 461 U.S. at 434; Quaratino v. Tiffany & Co.,
supra, 166 F.3d at 425; Ms. C. v. Plainfield Bd. of Educ., No.
3:03CV1696 (JBA), 2004 WL 2381724 at *1-*2 (D. Conn. Sept. 30,
2004) (adopting in part Report & Recommendation of Margolis,
M.J.).

    3.  Summary Judgment

    The standards applicable to a motion for summary
judgment are well-settled and require only brief review.

> Summary judgment shall be granted when there is no
> genuine issue of material fact and the moving party is
> entitled to judgment as a matter of law.  Fed.R.Civ.P.
> 56(c). . . . This form of remedy is inappropriate when

> the issue to be resolved is both genuine and related to
> a disputed material fact.  An alleged factual dispute
> regarding immaterial or minor facts between the parties
> will not defeat an otherwise properly supported motion
> for summary judgment.  See Howard v. Gleason Corp., 901
> F.2d 1154, 1159 (2d Cir. 1990).  Moreover, the exis-
> tence of a mere scintilla of evidence in support of
> nonmovant's position is insufficient to defeat the
> motion; there must be evidence on which a jury could
> reasonably find for the nonmovant.  Anderson v. Liberty
> Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91
> L.Ed.2d 202 (1986).

Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir.

2004); accord Cordiano v. Metacon Gun Club, Inc., 575 F.3d 199,

204 (2d Cir. 2009), citing Celotex Corp. v. Catrett, 477 U.S.

317, 322-23 (1986); Rubens v. Mason, 527 F.3d 252, 254 (2d Cir.

2008); Jeffreys v. City of N.Y., 426 F.3d 549, 553-54 (2d Cir.

2005).


        B.  Plaintiffs' Motions


        1.  Prevailing Party


     Plaintiffs argue that B.W. is a prevailing party

because she obtained relief on the merits that was ordered by the

IHO and materially altered the legal relationship between herself

and defendant (Pls.' Mem. in Support at 13).


            a.  Relief on
                the Merits


     Plaintiffs initially argue that because B.W. obtained

an order in the first hearing finding that defendant failed to

provide K.S. with a FAPE and directing the CSE to reconvene and develop a compliant IEP, she achieved the necessary level of success to qualify as a prevailing party with respect to that hearing alone (Pls.' Mem. in Support at 15-17; Pls.' Reply Mem. at 2-5; Mazur Aff. ¶ 30).  Plaintiffs claim that IHO Joyner's remanding the case for another CSE meeting to recommend an appropriate placement for K.S. rather than ordering payment of tuition at Stephen Gaynor School does not preclude prevailing party status (Pls.' Mem. in Support at 15-16).  Defendant argues in response that B.W. did not achieve the "relief sought" because her hearing request did not specifically ask for an order finding that defendant violated the "child find" provision, an order finding that defendant denied K.S. a FAPE, or an order directing the CSE to develop an appropriate IEP (Def.'s Mem. in Opp. at 5-6, quoting Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., supra, 489 U.S. at 791).

However, an IDEA Impartial Hearing request need not plead in formal detail every possible form of relief a parent might seek.  A party requesting a hearing need only offer "a proposed resolution of the problem to the extent known and available to the party at the time."  20 U.S.C. § 1415(b)(7)(A)(ii)(IV).  In N.S. ex rel. P.S. v. Stratford Bd. of Educ., 97 F. Supp. 2d 224, 229 (D. Conn. 2000), the Honorable Stefan R. Underhill, United States District Judge, found it was

appropriate for Magistrate Judge Donna F. Martinez to consider
the parents' success on issues other than those formally raised
in their hearing request in determining whether plaintiff was a
prevailing party in an IDEA attorney's fees action.  Magistrate
Judge Martinez had noted in her Report and Recommendation to
Judge Underhill that, "[a]lthough not every item of relief [was]
identical to the relief demanded in their request for a hearing,
the parents did achieve success on several significant issues
. . . [including] succe[ss] in having the IEP declared deficient,
thereby enabling them to engage in a new, dynamic process of
designing a specialized education plan for their daughter." N.S.
ex rel. P.S. v. Stratford Bd. of Educ., supra, 97 F. Supp. 2d at
229, 241.  Judge Underhill stated that to limit the inquiry to
the relief actually requested in the hearing request would be
"formalistic, . . . render[ing] the prevailing party question
dependent on the technicalities of pleading." N.S. ex rel. P.S.
v. Stratford Bd. of Educ., supra, 97 F. Supp. 2d at 229; see also
G.M. v. New Britain Bd. of Educ., supra, 173 F.3d at 83 (to deny
attorney's fees based on plaintiffs' failure to request up front
the exact relief they ultimately received "would impose exces-
sively onerous burdens on litigants seeking fee awards, so that
virtually anything less than perfect congruence between the
relief requested and the relief obtained would defeat a fee
award").

"The correct comparison is between . . . the issues actually litigated, and the results achieved." N.S. ex rel. P.S. v. Stratford Bd. of Educ., supra, 97 F. Supp. 2d at 229-30. Although B.W. did not explicitly request orders that defendant violated the "child find" provision and denied K.S. a FAPE, she did argue these points in her hearing request and throughout the proceedings[5] (First Impartial Hearing Request at 1; Parent's Post-Hearing Memorandum of Law, annexed as Ex. H to Exhibits in Support of Plaintiffs' Motion for Summary Judgment Awarding Attorney's Fees and Costs; see generally Transcript of Hearings). Further, the relief B.W. did seek -- reimbursement of tuition at a private school -- would, in any event, require a finding that defendant denied K.S. a FAPE.

At the most basic level, B.W. did obtain what she had asked for in her hearing request -- a finding that the IEP prepared for K.S. did not provide a FAPE and that K.S. needed more.  IHO Joyner's decision essentially ordered defendant to provide a FAPE; she just gave the CSE the initial opportunity to design it rather than ordering a specific in-school program or the payment of private school tuition.  "A plaintiff may be considered a prevailing party even though the relief ultimately obtained is not identical to the relief demanded in the com-

---

[5]These points were also hotly disputed by defendant throughout the proceedings (see, e.g., Tr. 912-13 (defendant's closing statement)).

plaint, provided the relief obtained is of the same general type." G.M. ex rel. R.F. v. New Britain Bd. of Educ., supra, 173 F.3d at 81, quoting Koster v. Perales, 903 F.2d 131, 134-35 (2d Cir. 1990).

An order for the CSE to develop a new IEP that provides greater benefits than those proposed in the initial IEP is not de minimis relief so minor that it does not warrant attorney's fees, even when the specific placement initially sought is denied. J.S. v. Crown Point Cent. Sch. Dist., No. 8:06-CV-159, 2007 WL 475418 at *1-*3, *5 (N.D.N.Y. Feb. 9, 2007) (where the IHO found that plaintiff was not entitled to reimbursement for money paid to private entities for educational and evaluation services but also found that the IEP was "totally insufficient to address [the student's] special education needs" and, thus, had to be annulled, plaintiff was entitled to attorney's fees because she won on the adequacy of the IEP, which was "the most important claim" and was "interrelated" with the other issues); N.S. ex rel. P.S. v. Stratford Bd. of Educ., supra, 97 F. Supp. 2d at 239-40 (awarding attorney's fees where plaintiffs requested an order directing the child's placement in a general education classroom but the IHO instead ordered defendant to design a new IEP to replace the deficient one, and noting that "the hearing officer's failure to make a specific directive with regard to N's permanent placement does not impact the determination of whether N's

parents are prevailing parties"); <u>Mavis v. Sobol</u>, 839 F. Supp. 968, 992 (N.D.N.Y. 1993) (plaintiffs were prevailing parties and, thus, entitled to recover attorney's fees, where the district court, on appeal from a decision of the Commissioner after an IHO hearing, held that plaintiff's IEP violated the IDEA and remanded the case to the CSE "with instructions to develop an Individual-ized Education Program for [plaintiff] which will address her particular needs and which is fully consistent with [certain IDEA provisions]").[6]

Defendant suggests that plaintiffs did not achieve the requisite "benefit" that would entitle them to prevailing party status (<u>see</u> Def.'s Mem. in Opp. at 7). <u>See</u> <u>Farrar v. Hobby</u>, <u>supra</u>, 506 U.S. at 111-12 ("[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."); <u>Mrs. M. v. Tri-Valley Cent. Sch. Dist.</u>, <u>supra</u>, 363 F. Supp. 2d at 569. It is clear, however, that IHO Joyner's order for the CSE to

_____

[6]Defendant attempts to distinguish <u>Mavis v. Sobol</u> on the ground that in that case, the IHO affirmatively required a change in the student's IEP, whereas here, defendant alleges, no change was required (Def.'s Mem. in Opp. at 10). However, IHO Joyner's decision clearly required such a change. She found that K.S.'s current IEP failed to provide her a free appropriate education and then ordered the CSE to develop an IEP "recommend[ing] an appropriate placement" (IHO Decision at 13-14). Because IHO Joyner found that defendant's initial IEP did not provide K.S. a FAPE, it would certainly need to be changed in order to do so.

reconvene and draft a new IEP providing for an appropriate education _would_ have benefitted K.S. if the CSE had complied with the order by recommending a more substantial IEP that actually provided K.S. a FAPE.  A largely unsuccessful defendant in an IDEA case may not use its own failure to comply with an IHO order to escape paying attorney's fees.

Defendant claims that it did not contravene IHO Joyner's order and that her decision should not necessarily have resulted in benefit to K.S., because it did not require that the new IEP establish a different program (Def.'s Mem. in Opp. at 7-8).  This argument borders on the absurd.  IHO Joyner found that defendant failed to provide K.S. with a FAPE and remanded the matter to the CSE to remedy this deficiency, an outcome clearly intended to benefit K.S.

To suggest that the CSE could have recommended the same deficient IEP a second time (as it inexplicably did) is logically indefensible.  In the absence of a change in the student's condition (and the defendants cite no evidence of such a change here), an IEP that is deficient in January is necessarily going to continue to be deficient in December.  Defendant's argument to the contrary would effectively render the fair hearing process meaningless.

If the initial IEP had provided K.S. with a FAPE, there would have been no reason for IHO Joyner to have directed the CSE

to reconvene.  The new IEP that the CSE issued obviously failed
to achieve what IHO Joyner ordered -- an appropriate education
for K.S. -- as evidenced by its failure to make any enhancements
to the deficient recommendations.  Defendant cites no evidence of
any development after IHO Joyner's decision that would have made
it appropriate for defendant to adhere to the original IEP.
Rather, defendant argues that the CSE did not violate IHO Joy-
ner's order because the new IEP, although it contained the same
provisions as the old one, applied to the upcoming school year,
and one cannot determine "the appropriateness of a placement for
a school year that has not yet happened, because progress (or
lack thereof) cannot yet be measured" (Def.'s Mem. in Opp. at 7;
see Def.'s Mem. in Opp. at 8).  By this logic, however, all IEPs
would be unchallengeable until they had been implemented and
there was empirical evidence on their effects.  IHO Joyner
declined to order the requested payment of private tuition in
order to give defendant the initial opportunity to remedy the
deficient IEP, not in order to allow more time to pass under the
deficient IEP in the hope that it might become sufficient.
Defendant's argument would justify the maintenance of all IEPs
found to deny a disabled child a FAPE, relegating students and
their parents to an indefinite plight of waiting it out to see if
the child improves under the deficient IEP.

A newly-developed IEP that contains the same provisions as a previous IEP which has been found to violate the IDEA is also in violation.  Bougades v. Pine Plains Cent. Sch. Dist., No. 05 Civ. 02861 (PGG), 2009 WL 2603110 at *9-*11 (S.D.N.Y. Aug. 25, 2009) (Gardephe, D.J.) (finding 2003-04 IEP was not reasonably calculated to provide the student with meaningful educational benefit where it was substantially similar to 2002-03 IEP which had been found deficient); Evans v. Bd. of Educ. of Rhinebeck Cent. Sch. Dist., 930 F. Supp. 83, 88, 102 (S.D.N.Y. 1996) (Parker, D.J.) (rejecting IEP that contained "substantially the same modifications and services that had to date not helped [the student]"); Straube v. Fla. Union Free Sch. Dist., 801 F. Supp. 1164, 1177 (S.D.N.Y. 1992) (Goettel, D.J.) ("[T]he IEP proposed for 1990-91 which would continue the [inadequate] programs of previous years could only be deemed inappropriate.").

B.W. achieved independent success in the first hearing, as IHO Joyner's orders finding that defendant denied K.S. a FAPE and directing the CSE to convene to draft an IEP providing an appropriate education constituted relief on the merits.

> b.  Material Alteration of
>     the Legal Relationship
>     Between the Parties

Plaintiffs claim that IHO Joyner's decision materially altered the legal relationship between the parties because it

"effectively invalidated" the existing IEP and obligated defen-
dant to provide K.S. a FAPE through a new IEP (Pls.' Mem. in
Support at 15; Pls.' Reply Mem. at 5-6).  They assert that absent
IHO Joyner's order, defendant would not have been legally re-
quired to provide a new IEP for K.S. until the old one expired in
December 2006 (Pls.' Reply Mem. at 7-8).  Specifically, plain-
tiffs note, defendant had a legal duty to reconvene the CSE in
order to prepare a new, compliant IEP within fifteen days of the
decision (Pls.' Reply Mem. at 8).  Defendant argues that the mere
finding that defendant denied K.S. a FAPE did not alter the legal
relationship between the parties, and notes that no replacement
IEP would have given plaintiffs the relief they sought, because
Stephen Gaynor School is not a special education school approved
by the district (Def.'s Mem. in Opp. at 6-7).

        Defendant cites O'Shea v. Board of Education of
Poughkeepsie School District, supra, 521 F. Supp. 2d at 291, for
the proposition that "[a]n administrative decision that finds
that the district denied a free, appropriate public education
("FAPE") to a student, without relief that alters the legal
relationship of the parties, is insufficient to confer
prevailing-party status on a parent who seeks attorneys' fees."
(Def.'s Mem. in Opp. at 3 (quote from defendant)).  However, in
O'Shea, the plaintiffs were found not to be the prevailing party
with regard to a State Review Officer ("SRO") decision because

the SRO decision on another of plaintiffs' IHO hearings, issued
the day before, had already found the child's placement during
the relevant school year to be inappropriate and, as determined
later by the district court, had legally entitled plaintiffs to
the relief they sought in the second SRO appeal.  O'Shea v. Bd.
of Educ. of Poughkeepsie Sch. Dist., supra, 521 F. Supp. 2d at
291.  There, "[p]laintiffs had already become entitled to the
relief they sought, and they would have been entitled to it even
if they had lost the hearing for which they now seek prevail-
ing-party status."  O'Shea v. Bd. of Educ. of Poughkeepsie City
Sch. Dist., supra, 521 F. Supp. 2d at 291.  Accordingly, the
second SRO decision "did not alter the legal relationship between
the parties, and thus can not confer prevailing-party status."
O'Shea v. Bd. of Educ. of Poughkeepsie City Sch. Dist., supra,
521 F. Supp. 2d at 291.  Because plaintiffs here had not become
entitled to the relief they sought before IHO Joyner's July 31,
2006 decision, this aspect of O'Shea is inapposite.

     In any event, an IHO decision on the merits is gener-
ally enough to "materially alter" the relationship between the
parties.  See A.R. ex rel. R.V. v. N.Y. City Dep't of Educ.,
supra, 407 F.3d at 76 (2d Cir. 2005) ("IHO's decision on the
merits in an IDEA proceeding . . . changes the legal relationship
between the parties"); O'Shea v. Bd. of Educ. of Poughkeepsie
City Sch. Dist., supra, 521 F. Supp. 2d at 289; cf. Mr. L. v.

Sloan, supra, 449 F.3d at 408 (when proceedings resulted in a
"purely private" settlement, there was no change in the legal
relationship of the parties which would confer prevailing party
status); J.C. v. Reg'l Sch. Dist. 10, Bd. of Educ., supra, 278
F.3d at 122-25 (no change in the legal relationship between the
parties because the result of administrative proceedings was a
settlement that was not read into the record); J.S. & M.S. v.
Ramapo Cent. Sch. Dist., 165 F. Supp. 2d 570, 575-77 (S.D.N.Y.
2001) (McMahon, D.J.) (finding that there was no material alter-
ation of the legal status between the parties because "the
agreement was never read into the record in front of the hearing
officer" and "[t]he hearing officer in the case was not asked to
render an opinion or affirm a settlement").

       B.W. successfully enforced her rights under the IDEA,
obtaining a decision from IHO Joyner which prohibited defendant
from maintaining the deficient IEP and entitled K.S. to a new IEP
that would provide her with a FAPE.

               b.  Prevailing Party
                   with Regard to Both
                   Hearings Combined

       Even if plaintiffs were not entitled to attorney's fees
for the first Impartial Hearing standing alone, the overall
course of events starting with the first hearing request and
ending with the settlement approved by IHO Marchiano justifies

                              32

the award of attorney's fees for the work performed by plain-
tiff's attorney in connection with the first hearing.

In Sabatini v. Corning-Painted Post Area Sch. Dist.,
supra, 190 F. Supp. 2d 509, the District Court for the Western
District of New York confronted circumstances analogous to those
here.  In that case, plaintiffs requested an Impartial Hearing,
claiming the school district had denied their child a FAPE, but
before the hearing was held the parties entered into a settlement
agreement, so-ordered by the IHO, which provided that the dis-
trict would search for a residential placement for the child and
provide him a FAPE for the next two-and-a-half years.  190 F.
Supp. 2d at 516.  The district was unable to find a placement,
and refused to place the child at the school plaintiffs had found
because it did not meet the district's criteria.  190 F. Supp. 2d
at 516.  Plaintiffs, arguing that the district had violated the
settlement agreement, requested another Impartial Hearing, which
resulted in an IHO decision ordering the district to comply with
the prior settlement agreement by placing the child at the school
plaintiffs had found.  190 F. Supp. 2d at 516-17.  After the
district again failed to comply, plaintiffs commenced an action
in the Western District of New York, the Court granted a prelimi-
nary injunction directing the district to comply with the IHO
decision, and plaintiffs and defendant entered into a settlement,

33

incorporated into a consent order, providing that defendant would pay for a year of private tuition.  190 F. Supp. 2d at 512, 517.

Defendant in Sabatini claimed that plaintiffs only qualified as prevailing parties in conjunction with the second Impartial Hearing and the federal court action, not the first Impartial Hearing.  190 F. Supp. 2d at 516-17.  The Court found, however, that plaintiffs were prevailing parties as of the first instance of IHO-ordered relief, the settlement agreement that stemmed from their first Impartial Hearing request.  190 F. Supp. 2d at 517-19.  Defendant's argument that plaintiffs did not prevail at this stage, the Court stated, was "based on an artificial segmenting of the events leading up to this litigation, which were not entirely discrete and separate from each other, as defendant suggests."  190 F. Supp. 2d at 517.  Rather, the Court found, "plaintiffs' first hearing request was part of a continuing series of events leading up to plaintiffs' ultimate success in this lawsuit, and it had a direct effect on subsequent proceedings both in this court and before the IHO."[7]  190 F. Supp. 2d at 517.

Here, as in Sabatini, the two hearings and their outcomes formed a continuous course of events in which the result

---

[7]The Court also emphasized that the subsequent IHO decision in plaintiff's favor relied on the defendant's failure to comply with the terms of the initial IHO-ordered settlement -- similar to defendant's failure to comply with IHO Joyner's order here. 190 F. Supp. 2d at 518.

of the second hearing -- an IHO-approved settlement in which
defendant agreed to pay K.S.'s private school tuition -- was
directly related to the outcome of the first hearing -- an IHO
decision finding that defendant had failed to provide K.S. a FAPE
and ordering the CSE to develop an IEP that would provide her a
FAPE.  Had defendant not been legally obligated by IHO Joyner's
decision in the first set of administrative proceedings to
develop a new IEP that would provide K.S. an appropriate educa-
tion, B.W. would not have requested the second hearing to address
defendant's failure to do so (see Second Impartial Hearing
Request at 1-2) and the parties would not have reached the IHO-
approved settlement in which defendant agreed to pay K.S.'s
private school tuition.  See J.C. v. Reg'l Sch. Dist. 10, Bd. of
Educ., supra, 278 F.3d at 123 (a party obtaining relief is a
prevailing party when there is a "causal connection" between the
filing of the administrative proceeding and the relief obtained);
D.M. ex rel. G.M. v. Bd. of Educ., Center Moriches Union Free
Sch. Dist., supra, 296 F. Supp. 2d at 403 (same); K.R. ex rel.
M.R. v. Bd. of Educ. of Brentwood Union Free Sch. Dist., supra,
66 F. Supp. 2d at 450 ("Where the litigation or administrative
proceeding is a material contributing factor in bringing about
the events that resulted in obtaining the desired relief, the
proceeding is causally related to the relief obtained.") (inter-
nal quotations and citations omitted).

Defendant argues that requiring a party who settles a second hearing to pay fees in conjunction with the first hearing would discourage defendants from settling.  It quotes the Supreme Court in <u>Buckhannon</u> to assert that "the possibility of being assessed attorney's fees may well deter a defendant from altering its conduct."  (Def.'s Mem. in Opp. at 12-13, <u>quoting</u> <u>Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.</u>, 532 U.S. 598, 608 (2001)).  However, this statement was made in the context of the <u>Buckhannon</u> Court's holding that private settle-ments may not support attorney's fees, while judicially (or, as courts have later held, administratively) sanctioned settlements do -- and, thus, appears to refer to the incentives affecting <u>private</u> settlements.  <u>See</u> <u>Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.</u>, 532 U.S. at 608.  The Court appears to have considered, and disregarded, the risk that a potential fee obligation will discourage defendants from entering into court-ordered settlements.

2.   Potential Reduction
        in Fees

Defendant argues that if plaintiffs are entitled to fees in conjunction with the first hearing, they should be reduced because, it claims, B.W. did not recover any of the relief she sought (Def.'s Mem. in Support at 15).  Defendant's contention that B.W. recovered none of the relief she sought has

36

already been rejected above, and this case does not present the type of unusual circumstances in which fees are appropriately reduced.  See Hensley v. Eckerhart, supra, 461 U.S. at 434.

Under fee-shifting provisions such as the IDEA's, "'[t]here is . . . a strong presumption that the lodestar figure represents a reasonable fee.'" G.M. ex rel. R.F. v. New Britain Bd. of Educ., supra, 173 F.3d at 84, quoting Quaratino v. Tiffany & Co., supra, 166 F.3d at 425.  However, a reduction in the total lodestar amount may be appropriate where "a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief" and the claims on which plaintiff failed "were unrelated to the claims on which he succeeded." Hensley v. Eckerhart, supra, 461 U.S. at 434; see Quaratino v. Tiffany & Co., supra, 166 F.3d at 425.  Here, plaintiffs are appropriately awarded the full amount of fees requested for the first hearing because all of B.W.'s claims "involve[d] a common core of facts" and were "based on related legal theories." Quaratino v. Tiffany & Co., supra, 166 F.3d at 425 (internal quotations omitted). B.W.'s entire case was based on the circumstances surrounding K.S.'s inadequate education from kindergarten through second grade, and her claim that K.S. was denied a FAPE, on which she prevailed, was "inextricably intertwined" with her request that defendant pay K.S.'s private school tuition. Quaratino v. Tiffany & Co., supra, 166 F.3d at 425.

37

Another consideration relevant to the decision to
reduce a fee award is the overall level of success in relation to
the hours expended.  Hensley v. Eckerhart, supra, 461 U.S. at
434.  As discussed above, IHO Joyner's decision provided B.W.
with the essence of what she was seeking -- a FAPE for K.S.  It
was only because of defendant's failure to carry out the terms of
IHO Joyner's order that B.W. did not actually obtain this relief
until the second set of proceedings was instituted.  The differ-
ence between the relief IHO Joyner ordered and the specific
relief B.W. was seeking does not justify a reduction in the fee
award.  See Ms. C. v. Plainfield Bd. of Educ., supra, 2004 WL
2381724 at *1-*2 (plaintiff's failure to achieve the compensatory
education she requested when she instead received a remand for a
new IEP did not warrant reduction in attorney's fees because "the
only claim on which [plaintiffs] did not prevail, the claim for
compensatory education, was based upon the identical procedural
violations on which they did prevail, namely eligibility for
special education, independent evaluation and the receipt of
special education and related services"; where the substantive
issues were resolved in plaintiffs' favor, the "failure to
achieve the remedy of compensatory education [wa]s insignifi-
cant").

38

3.   Summary

Because I find there are no genuine issues of material fact and plaintiffs are entitled to judgment as a matter of law, I award plaintiffs $18,642.50 for the 58.9 hours of work performed in connection with B.W.'s first administrative hearing. Plaintiffs are also entitled to fees and costs in connection with the instant action.  I shall permit plaintiffs to submit supplemental documentation supporting a claim for fees and costs in connection with this action.

IV.  Conclusion

Accordingly, for all the foregoing reasons, plaintiffs' motions for summary judgment awarding attorney's fees (Docket Items 13 and 14) are granted.  In addition, plaintiffs are directed to submit documentation of their fees and costs incurred in connection with this action within fifteen (15) days of the date of this opinion.

Dated:  New York, New York
        June 3, 2010

                              SO ORDERED


                              HENRY PITMAN
                              United States Magistrate Judge

39

Copies transmitted to:

Michael D. Hampden, Esq.
Partnership for Children's Rights
17th Floor
271 Madison Avenue
New York, New York 10016

David A. Rosinus, Jr., Esq.
New York City Law Department
Room 2-305
100 Church Street
New York, New York 10007